Town of Bridgewater *v.* Town of Roxbury.

We advise that the answer of the defendant to the complaint is sufficient.

In this opinion PARK, C. J., and PARDEE, J., concurred. CARPENTER and GRANGER, Js., dissented.

———————— ‹•••› ————————

THE TOWN OF BRIDGEWATER *vs.* THE TOWN OF ROXBURY.

Hartford District, March T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

Where the person who made entries which are admissible in evidence is beyond the reach of process or is incompetent to testify, it is the same as if he were dead, and his handwriting may be proved.

To make entries upon an account book admissible it is not necessary that the transaction to which they are applied should be directly between the original creditor and debtor.

Nor that they should be against the interest of the person making them.

In the case of an entry against the interest of the person making it, the entry is admissible at whatever time it was made; but in the case of an entry that becomes admissible only because made in the course of business, it is essential that it should have been made at the time of the transaction to which it relates.

In a suit for supplies furnished by the plaintiff town to a pauper of the defendant town, a selectman of the latter testified to having employed a physician to attend upon the pauper and to his having been afterwards paid by the town, but he could not fix the date of the attendance, which became important. Held that entries upon the account book of the physician, (who had since become mentally incompetent,) made in the regular course of his business, charging the town for his attendance upon the pauper, with the date, and crediting the town with payment, were admissible for the purpose of showing the time when the service was rendered.

They were also admissible to corroborate the testimony of the selectman.

Also as evidence of the fact that the medical service was rendered.

Town of Bridgewater *v.* Town of Roxbury.

The entries made by the physician were not to be excluded on account of his interest as an inhabitant of the defendant town. No controversy with regard to the pauper had then arisen, and it was not reasonable to suppose that the entries were made in anticipation of any benefit to the town.

A possibility of a corrupt motive always exists in respect to human acts, but some probability of it ought to appear in order to exclude entries fairly and regularly made.

Where a town employs a physician to attend upon a person who is in fact a pauper and is in need of medical attendance, it is not necessary that the pauper should know that the physician is to be paid by the town. And so with any supplies furnished.

[Argued March 3d—decided April 10th, 1886.]

ACTION to recover for supplies furnished to paupers claimed to belong to the defendant town; brought to the Court of Common Pleas of Litchfield County, and tried to the court before *Warner, J.* Facts found and judgment rendered for the defendant. Appeal by the plaintiff. The case is fully stated in the opinion.

*L. D? Brewster* and *J. H. McMahon*, for the appellant.

*J. Huntington* and *A. D. Warner*, for the appellee.

LOOMIS, J. This is a complaint to recover for supplies furnished Esther A. Snyder and her three minor children.

The alleged pauper was born in the defendant town in 1853, of parents, Chauncey and Patty Wilmot, who at the time of her birth had their settlement in New Milford. Chauncey Wilmot died in 1858 in the town of Roxbury without having gained a settlement there. Soon after Patty, the mother, with her minor children, moved from the defendant to the plaintiff town and remained there until May, 1860, and then with her children returned to the defendant town, where she lived in a shanty built by her son Daniel for her and her children to occupy, and there remained for about twenty years. Esther A., the pauper in question, was married November 27th, 1871, to LaFayette Snyder, a person of full age, but who had at the time no settlement in any town in this state.

Upon these facts it was conceded that the pauper in question would take the settlement of her mother, if the latter had gained one by commorancy in the defendant town after the decease of her husband. And it was also conceded that such settlement had been gained by the mother unless prevented by two payments made by the town for medical attendance upon Patty in the years 1865 and 1866.

Upon this subject the court finds :—" In 1865, Patty being sick and needing medical aid, Doctor Downs, a physician of Roxbury, informed a selectman of Roxbury that she was sick and that he, the doctor, could no longer attend to her unless the town would pay him. The selectman thereupon directed the doctor to render her medical assistance and charge the same to the town, she being unable to pay the doctor and having no property. Afterwards the doctor, on the 26th day of April, 1865, rendered to her medicine and attendance and charged therefor $1.50 to the town of Roxbury, which was paid to him by the town September 29th, 1865. On the 16th of July, 1866, the doctor rendered a like attendance upon Patty while sick and charged therefor $1.50, which the town paid him in 1867, she having no property."

The question whether medical aid was needed and furnished, being a question of fact exclusively for the trial court, has thus been settled. Whether the evidence was of sufficient weight to justify such finding is not a question which this court can review in this proceeding, but the admissibility of the evidence, if objected to, is properly before this court.

To prove the facts found by the court the defendant offered as a witness one who was a selectman of the defendant town for the years 1865 and 1866, who testified in substance that he was selectman during those years and that he gave instructions to Dr. Downs to doctor Patty during that time ; that the doctor came to him in 1865 or 1866, he thought it was in 1865, and stated that Patty was sick, and that he could no longer attend upon her without pay for further services, and that thereupon he directed the doctor to attend

her and told him the town would pay him; that the doctor brought in his bill afterwards for the year, and it was paid; that the selectmen had no record of it, but that he thought the bill was $1.50. No error is predicated upon the admission of this evidence. But the defendant further offered, and the court admitted against the plaintiff's objection, the entries in the account books of Dr. Downs, after proving that the doctor at the time of trial had become mentally incompetent to testify or transact any business, and that the books offered were his books, kept by him in his own hand, and that the charges were made in the regular order and course of business, with like charges and credits against divers other persons and patients; that the charges were entered first in a day book and posted into a ledger; that the entries in question were:—

"April 26, 1865. Town of Roxbury, Dr. To visit Patty Wilmot and med., $1.50.

"Sept. 29, 1865. Cr. By town order to balance account to this day, $16.98.

Also, "July 16, 1866. Town of Roxbury, Dr. To visit Patty Wilmot, $1.50." "1867. Cr. By town order, $8.00."

Were these entries admissible? We think they were. 1. To show the time when the services were rendered, and the fact and date of payment. In these respects it was necessary to supplement the testimony of the selectman, who left the date uncertain even as to the year. The time was quite important in order to break the six years self-supporting commorancy after May, 1860, and again before March 27th, 1871. 2. It was admissible to corroborate the testimony of the selectman. Suppose the defendant had rested upon the testimony of the selectman alone, and there had been no such entries on the doctor's books, would not the absence of such entries furnish very strong inferential evidence that there was no such medical attendance ever rendered or paid for? *Morrow* v. *Ostrander*, 13 Hun, 219. If then the absence of such entries would greatly impair the selectman's testimony, their existence must necessarily furnish strong support.

If the evidence was admissible for either of these pur-
poses the ruling of the court is sufficiently vindicated. But
the question discussed by counsel was whether these entries
were admissible as tending to show the fact that medical
services were rendered to Patty Wilmot and paid for by the
town? It is highly probable that the court below gave effect
to the evidence as the question assumes, and therefore we
will discuss it as if it was of controlling importance.

We think the evidence was admissible for these purposes,
in addition to those mentioned previously. In *Abel* v. *Fitch*,
20 Conn., on p. 96, this court, (ELLSWORTH, J., delivering
the opinion,) stated the rule as follows :—" Entries by per-
sons since deceased, having full and peculiar means of
knowledge, made at the time, in the regular course of busi-
ness, in the usual and proper place and manner, especially
if in the discharge of one's duty, are admissible to the jury
as part of the *res gestæ*." In Abbott's Trial Evidence,
p. 322, it is said :—" An entry or memorandum, whether in
a book or any other form, made in the usual course of busi-
ness, and at about the time of the transaction, by a person
not a party to the action, who is shown to have had means
of personal knowledge of the fact recorded, is competent
evidence of such fact—1. If the person who made it is pro-
duced and verifies the hand-writing as his own, and testifies
that it was so made, and correct when made, although he
may have no present recollection whatever of the transac-
tion ; or, 2. If the person who made it is dead, and his sig-
nature or hand-writing is proved, and he does not appear to
have had any interest to falsify." A distinction applicable
to this last qualification will be referred to hereafter. See
also 1 Greenleaf on Evidence, § 116. There is some dis-
agreement in the authorities as to the necessity of calling
the person who made the entries, if he is living, though he
may be without the jurisdiction. But in this state, and in
several other jurisdictions, the reasonable rule has been
adopted that if the person making the entries is beyond
the reach of process, or is incompetent to testify, it is the
same as if he were dead. *Bartholomew* v. *Farrell*, 41 Conn.,

109; *New Haven & Northampton Co.* v. *Goodwin*, 42 id., 230; *Livingston* v. *Tyler*, 14 id., 499; *Aller* v. *Berhaus*, 8 Watts, 77; *Crouse et al.* v. *Miller*, 10 Serg. & Rawle, 158. We do not see why the case at bar does not fall directly within the rules referred to.

As a case analogous in principle and illustrative of the application of the rule in this jurisdiction, we cite *Ashmead* v. *Colby*, 26 Conn., 289, where the petitioners claimed that the respondents had combined to defraud them in the sale of land in Virginia as containing gold, and that *B*, one of the respondents, at different times when the petitioners were about to examine the tract, had mingled gold dust with the soil in particular places, and then caused them to examine the soil in those places and find the gold thus placed there. As a part of the evidence going to establish this fact, they offered an account book kept at a neighboring mine by a clerk since deceased, containing entries of sales of gold dust to *B*, just before the times when they made the examinations, for the purpose of showing that *B* had gold dust in his possession at those times which he might have so used. Now if the entries on the books of this mining company, of which the respondents had no control, containing charges of the sale of gold dust, would prove the delivery to and possession of the gold dust by the person referred to, why will not the charges for medical attendance and medicine furnished to Patty Wilmot prove that she was the recipient of these things?

But we are here reminded of one of the claims in behalf of the plaintiff, that this kind of proof can only apply where the transaction is directly between the original debtor and creditor. This limitation however was first made as one of the numerous rules that have obtained in the United States regulating the admission of the party's own entries in his own books, which were to be supported by the suppletory oath of the party himself in cases where originally he could not otherwise testify in his own behalf. See *Poultney* v. *Ross*, 1 Dall., 138, decided by the Court of Common Pleas

in Pennsylvania in 1788, and *Deas* v. *Darby,* 1 Nott & McC., 436, decided in 1819.

The principle can have no proper application to contemporaneous entries by third parties in the usual course of business. But even under the former system, if an order to deliver goods to a third person was proved by evidence *aliunde,* the delivery could be proved by the books and suppletory oath. *Mitchell* v. *Belknap,* 23 Maine, 475.

In the case at bar there was independent evidence as to the order to render medical services and medicine to Patty Wilmot ; and moreover it was the statutory duty of the selectmen to order such relief if she was a pauper. *Welton* v. *Wolcott,* 45 Conn., 329. In *Coffin* v. *Cross,* 3 Dane's Abr., 322, decided in Massachusetts in 1800, the plaintiff's books and oath were held admissible to prove the fact that medicine and medical attendance were furnished to a third person, not the defendant. In *Bay* v. *Cook,* 2 Zabr. (N. J.,) 343, a suit was brought by a physician to recover for medicine and attendance for one Sharp, a pauper of the township of Washington, who fell sick in the town of Independence. The defendant was overseer of the poor for the township of Washington and employed the plaintiff to administer to the pauper's necessities. The plaintiff could not recover of the town because no order for relief had been obtained as specially required by a statute then in force. Upon the trial it was held that the physician's book of accounts was admissible, even where the items on the face of the book were not charged on the same day when the services were rendered. In *Leland* v. *Cameron,* 31 N. York, 115, it became important to prove that an execution in a certain case had been delivered to the sheriff, who was dead and whose papers had all been burned with his house. The only evidence was the entry by an attorney in his register, which was held to be competent evidence to prove the fact. In *Warren* v. *Greenville,* 2 Stra., 1129, the book of a deceased attorney containing charges relating to a common recovery were admitted as tending to prove a life estate, where it appeared by the book that the charges had been paid. In *Doe*

v. *Robson*, 15 East, 32, entries of charges made by an attorney in his books showing the time when a certain lease, prepared for a client of his, was executed, which charges were shown to have been paid, were held to be evidence after the attorney's death to show that the lease (executed under a power to lease in possession and not in reversion, which lease bore date the 31st of August, 1770, and purported to grant a term from the 29th of September then next ensuing,) was not in fact executed till after the 29th of September, inasmuch as the charge for drawing and engrossing the lease was under date of October, 1770. This entry was considered as one against interest, and put upon this ground by Lord ELLENBOROUGH, C. J., and BAILEY, J., who delivered the opinions, and it was found to be against interest because the attorney who entered the charge had also entered a credit showing that a debt to him from another was discharged. Upon the same ground the entries of Dr. Downs might be treated as against interest. There is however the other fact that he was an inhabitant of the defendant town, which we will advert to in another connection.

But it must not be supposed that the admissibility of the entries in question depends on the fact that they were against interest. Many cases give great prominence to this fact because they belonged to that class of entries, but a clear distinction was long ago made, as laid down by PARKE, B., in *Doe* v. *Turford*, 3 Barn. & Ad., 890, to this effect—in case of an entry against interest proof of the handwriting of the party, and his death, is enough to authorize its reception; at whatever time it is made it is admissible; but in the other case (namely, an entry in the course of business,) it is essential to prove that it was made at the time of the transaction to which it relates. In 1 Greenleaf on Evidence, § 120, the same distinction is more elaborately treated and explained.

The contemporaneous character of the entries in question appears on the face of the books, the original entries being made daily in a regular day book in which were entered daily visits and charges coming up on both sides to the dates in question.

In a note by Mr. Hare, the American editor of the Exchequer Reports, to the case of *Percival* v. *Nanson*, 7 Exch., on p. 4, it is said :—" Entries by a third person in the course of business are in general admissible in this country (United States) after his death, whether they were for or against his interest when made ; and the entries of a deceased agent may consequently be read in support of a suit brought by the principal, even where they are of payments made by and not to the principal."

This proposition is fully supported by the case of *Dow* v. *Savage*, 29 Maine, 117. In *Inhabitants of Augusta* v. *Inhabitants of Windsor*, 19 Maine, 317, it was held that entries by a deceased physician in the regular course of his business are admissible in evidence when corroborated by other circumstances to render them probable, and that it was not necessary that entries to be admissible should be against the interest of the deceased person making them.

We discover a tendency to more liberality in the courts respecting the admission of entries by both parties and third persons.

In 1 Wharton's Law of Evidence, § 246, it is said :—" Original entries of deceased parties in their own books are held (in several jurisdictions of the United States) admissible, even though self-serving, when contemporaneous, and when confined to a transaction within the business of the party."

The distinction previously adverted to disposes of any objection arising from the fact that Dr. Downs was interested as an inhabitant of the defendant town. But we do not think under any rule that has ever obtained in this state that the court upon this finding could say that the deceased physician had such an interest to pervert the fact as ought to exclude his entries. No controversy with any other town respecting this pauper had arisen or was contemplated. The acts both of the selectman and the physician are consistent with a belief on their part that Patty belonged to the defendant town to support and that no other town could be compelled to reimburse it. Indeed the expense at the time

was apparently against the interest of the town. True, some twenty years later in a controversy with the plaintiff town respecting the settlement of a child and grandchildren of this pauper, the facts became important to exempt the defendant from liability, but is it reasonable to suppose that the physician made these entries in anticipation of any such resulting benefit to the town? A possibility of a corrupt motive always exists in respect to human acts, but some probability of it ought to appear in order to exclude entries fairly and regularly made as these were.

But the further claim is made in behalf of the plaintiff, that though the evidence we have been considering was properly received and the fact established that the town did furnish aid to Patty at the times and in the manner claimed, yet it was not effectual to prevent her gaining a settlement in the defendant town for two reasons—1st. Because it was not shown that she was in a condition to require aid, and 2d. Because it does not appear that she received the aid kowing that it was furnished to her as a pauper.

As to the first point, the facts found specifically by the court are that Patty at the time was sick, that she needed medical aid, that she was unable to pay for it, and that she had no property. It is difficult to conceive what fact is lacking to make her a pauper.

These facts must be accepted by this court as conclusive, unless indeed they are vitiated through an erroneous admission of evidence whereby they were found, which was objected to in the trial court. Though this court may consider the evidence insufficient yet the finding must remain. The only question for review in this connection is whether evidence was improperly received, and even this is not properly reviewable unless it was objected to in the trial court.

Now in addition to the evidence we have been considering, it was further proved—" that from May, 1860, to 1867, she had no visible estate ; that she lived in a house eighteen feet by twenty in dimensions, the sides of which were covered with unmatched hemlock boards ; the roof was

covered in part with shingles, the remainder with boards; only one room, a part of which only had any flooring; the ceiling was the roof; and her only business was to work for her neighbors and gather and sell berries in their season. There was no evidence that her children or any one rendered her any aid, except that her son Oliver disposed of some things for her which she brought into the house."

Now this evidence was not objected to, and if it had been it would have been admissible as tending to show that Patty had no property. Indeed it would do more, it would make a very good *primâ facie* case; for the absence of all visible estate for seven years would ordinarily indicate the non-existence of an invisible estate, so far as it related to this world. All the surroundings of this person indicated great destitution, not only of property but of friends to aid as well.

The second reason for rendering the supplies furnished ineffectual is, that it is not shown that Patty received aid as a pauper or knew the town was to pay the doctor. Now it is quite true that the selectmen of a town cannot create a pauper by any mere act of their own; they can relieve one who is a pauper and in need, and they are required to do so by the statute. But no rule of law has ever obtained in this state requiring supplies to be labeled "pauper supplies," or the recipient to be labeled "pauper," or to acknowledge the receipt of supplies as a pauper. An acquiescence on the part of the recipient may be presumed from circumstances showing need and destitution; and where the court is satisfied that relief was furnished to a needy pauper pursuant to duty created by the statute, the town may have the benefit of it, either to interrupt a settlement by commorancy or to lay the foundation of a claim over against another town.

There was no error in the judgment complained of.

In this opinion the other judges concurred.