Merrimack, }
May 1, 1928. }

THOMAS H. LEBRUN *v.* BOSTON & MAINE RAILROAD.

*Joseph C. Donovan, Winthrop Wadleigh* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

SNOW, J. 1. "Each party in a civil cause is entitled to three peremptory challenges of jurors drawn for the trial. The peremptory challenges shall be exercised alternately, beginning with the plaintiff." P. L., c. 339, s. 19.

On impaneling the jury both the plaintiff and the defendant exercised their first challenges. The plaintiff waived his second challenge and the defendant did likewise. When the plaintiff attempted to exercise his third challenge, objection being made, the court ruled that he was not entitled to a third challenge, to which ruling he excepted. The plaintiff's position in argument is, in effect, that the statute gave him three several peremptory rights of challenge, none of which could be lost except by waiver, and that his waiver of his second challenge, being specific, could not be extended to deprive him of his third challenge. The question raised is one of construction, in which little aid is afforded by decisions from other jurisdictions.

The statute invests the court with authority to prescribe "by general rules or special order" "the mode of drawing and impanelling the jury, and of exercising the right of peremptory challenge." P. L., c. 339, s. 20. Notwithstanding that the provision granting such discretionary control has come down to us, unchanged, from the earliest legislation on the subject (Laws 1859, c. 2213, s. 2; G. S., c. ccxii, s. 11; G. L., c. 231, s. 16; P. S., c. 227, s. 18), the power of the court thereunder has been limited by two successive amendments of the preceding section of the chapter of which it was then a part. P. S., c. 227, s. 17. Each of these two amendments purported to confer upon the parties substantive rights in diminution of the discretionary power otherwise vested in the court. In 1895, section 17, c. 227, P. S., which theretofore contained merely the grant to each party of two peremptory challenges, was amended to read: "Each party in a civil cause is entitled to two peremptory challenges . . . and *may*

*challenge any juror at any stage of the drawing,* providing his peremptory challenges are not then exhausted." Laws 1895, *c.* 67, *s.* 1. In 1917, P. S., *c.* 227, was again amended by striking out *s.* 17 (as theretofore amended) and inserting the provisions now in question, namely, "Each party in a civil cause is entitled to three peremptory challenges of jurors drawn for the trial. The peremptory challenges *shall be exercised alternately beginning with the plaintiff.* When the plaintiff and defendant have exhausted their challenges the court shall take unusual care and precaution that the jurors who take the places of the ones last challenged shall be wholly indifferent and impartial and reasonably satisfactory to both sides." Laws 1917, *c.* 12, *s.* 1; P. L., *c.* 339, *s.* 19. The italics are ours. The evil sought to be remedied by the latter statute, and the terms used to effect the legislative purpose, connote a radical change in policy. The legislature was not content merely to repeal the objectionable provision introduced by the act of 1895 and thus leave the "mode . . . of exercising the right of peremptory challenge," as formerly, in the discretion of the court, but proceeded to lay down a definite statutory rule of procedure. For the unrestrained latitude as respects the time and order of the exercise of the right of challenge which had been sanctioned by the amendment of 1895, the legislature of 1917 substituted the very definite requirement that the "challenges shall be exercised alternately beginning with the plaintiff"; and, with the apparent purpose of avoiding any hardships which might arise in the application of such a rule, directed the trial court, in the exercise of its discretionary power, to take unusual care as to the indifference, impartiality and acceptability of the jurors who should be drawn to take the places of the ones last challenged.

In designating which party shall take the initiative, and in the requirement of alternative action, the legislature intended to confer upon the parties substantial and reciprocal rights as respects the order in which rejections should be made. Each was given, not only the right to make his challenge in his turn, but the right to have his opponent exercise his rights in the prescribed order so long as he had any objection to the panel as then made up. In other words, while at each stage of the drawing one party is entitled to reject a juror, his opponent is equally as well entitled to have such party precede him in the exercise of his right of challenge, if in the light of the existing composition of the jury there remains on the panel any one whom he cares to challenge. To be sure, the challenging party may waive his right, but such waiver is tantamount to a declaration that the

panel as then constituted is satisfactory to him. When his opponent, acting on such implied declaration by a like waiver, declares his satisfaction with the panel, both parties have exhausted their peremptory rights of challenge as limited by the statute. The right to challenge a juror is not a right to select but the right to reject. *State* v. *Doolittle,* 58 N. H. 92; *Shulinsky* v. *Railroad, ante,* 86. The parties beginning with the plaintiff alternately exercised their rights of challenge so long as, upon their respective representations, either desired to reject any member of the panel drawn. Nor is it any answer to say that, if following the plaintiff's waiver the defendant had exercised his right to challenge instead of waiving, the plaintiff might have peremptorily rejected a juror who had sat in the panel preceding his waiver. The change in the composition of the panel might well justify such a course and such action would not be in conflict with the implied declaration of satisfaction with the panel as it was constituted before the change.

The question as to the extent of the court's discretion to grant relief from the effect of a waiver based upon mistake or inadvertence, or to perfect an indifferent, impartial and acceptable jury when the ordinary course of alternative challenge has been cut short by waiver, is not presented, and has not been considered. The ruling of the court was in denial of the plaintiff's claim as a matter of right to a third challenge under the circumstances presented, and is sustained.

2. The action is brought to recover for an injury alleged to have been received on August 7, 1917, while the plaintiff was leaving the defendant's car shops where he was employed. He testified that a loose cross-plank in a defective walk was thrown up between his legs by the movement of a passing fellow pedestrian, locking his step and tending to throw him; that in a successful effort to stay on his feet he received a strain from which he suffered severe pains in the abdomen, weakness and a dripping of urine, all of which have continued at intervals ever since.

He had suffered a previous injury on November 1, 1915, while likewise in the defendant's employ, for the results of which he has since released the defendant upon settlement without suit. The defendant attributes the injuries sued for in whole or in part to this earlier accident. The plaintiff, on the other hand, while admitting that he then suffered a double rupture and passed blood with his water for a period of five days following the accident, denies that he suffered therefrom any dripping of urine or other trouble for which recovery is now sought. The parties are likewise in disagreement as to the

circumstances of the first accident, the defendant claiming that the plaintiff was struck in the scrotum by a projecting bolt while being carried around by a reaming machine; the plaintiff on the other hand asserting that the injury occurred from his being thrown astride a studding which merely hit him "between the legs." To show the nature and extent, and location of, the injuries received by the plaintiff in 1915 the defendant offered the written report of Dr. Stillings, the railroad's surgeon, since deceased, of his examination of the plaintiff made on the day of the accident. Subject to the plaintiff's exception, the report was admitted as a record made in the regular course of business.

It was the practice of the defendant to have an examination and a written report by its surgeon in all cases of accidental injuries suffered by its employees. Dr. Stillings was the regular surgeon of the defendant. It was his duty to make a report in each case he was called to attend. Printed blanks were provided for that purpose entitled "Boston and Maine Railroad. Surgeon's Report." The form, beside containing appropriate questions, included a diagram of the human form upon which the surgeon was required to mark in red the "location of injuries." It appeared in evidence that the plaintiff submitted himself to Dr. Stillings for examination on the day of the 1915 accident, and that two days later the doctor filed the report of his examination in the defendant's claim department. It was made upon the customary blank, filled out and subscribed in his own handwriting. Three entries therein are involved in the plaintiff's exception: (1) Under the heading "Nature and extent of injuries" the doctor reported "severe contusion of perineum and scrotum with rupture of the urethra. Blood mixed with the urine and dribbles away from him." (2) In reply to the question "What did the injured person say as to the cause of his injuries, giving as nearly as possible his own words?", he reported in quotation marks "I was running an air machine reaming out a hole in a sadelle, and the reamer caught in the hole and I couldn't stop the machine and it took me around with it and I struck on a bolt that was sticking up six or eight inches." (3) Marks in red upon the diagram confirmed the described location of the injury. Upon the deposit of the report in the claim department of the defendant it was impressed in regular course with a stamp bearing the date and place of its reception, and filed as a part of its records, from which it was produced and identified at the trial by the custodian having charge thereof.

The plaintiff contends that the report was a self-serving declara-

tion and, therefore, inadmissible under the principle of *Finkelstein* v. *Railway*, 75 N. H. 303, and *Rollins* v. *Chester*, 46 N. H. 411, 415. Neither of these cases presents a situation analogous to the one here under consideration. In each, the evidence offered was of the statement of an agent of the defendant, living and present at the trial, made subsequent to the main fact and under circumstances plainly open to the suspicion that it was designed to afford evidence for his principal. The statements were clearly self-serving. The cases are numerous in which like statements have been held inadmissible. *Barker* v. *Barker*, 16 N. H. 333, 339; *Bailey* v. *Woods*, 17 N. H. 365, 372; *Woods* v. *Allen*, 18 N. H. 28, 33; *Judd* v. *Brentwood*, 46 N. H. 430; *Smith* v. *Wells*, 70 N. H. 49, 52. See *Hoxie* v. *Walker*, 75 N. H. 308, 313; *Hansen* v. *Railway*, 78 N. H. 518, 519. The reason for their rejection, although not heretofore developed in the cases, is not, however, based upon an independent exclusionary principle of evidence (3 Wig., Ev., s. 1765) but upon the ground that, being extra-judicial statements, they do not come within the exceptions to the hearsay rule because they evidence a positive counter-motive to misrepresent. 3 Wig., Ev., s. 1527; *Caplan* v. *Caplan*, *post*, 318.

The report here was not, however, of a self-serving character, as the term is customarily used, as respects any issue raised in this action. There can be no claim that the statements therein in any way promoted the interest of Dr. Stillings. If the report could be treated as the statement of the defendant railroad, it would not be self-serving in the sense that it could be found to have been made for the purpose of creating evidence in its favor upon any issue here presented; for not only was the report made before the main fact occurred, that is, before the happening of the alleged accident of 1917 on which the plaintiff's action is predicated, but the situation presented by the plaintiff's second accident could not have been in the contemplation of the defendant, or of its surgeon, at the time of the entry of 1915. In so far as the report may have tended to exaggerate the extent of the plaintiff's earlier injury or the forceful manner of its incurrence, such exaggeration, as related to that injury, was manifestly against the interest of the defendant. Such overstatement, if any, had no tendency to make evidence favorable to the defendant in any contingency that was then reasonably foreseeable. Its character as a non-self-serving declaration was not changed by the event of the second accident. It is not, therefore, open to the suspicion that it was fabricated to make proof favorable to the defendant in the pending action. This conclusion enables us to lay out of the

case any claim that the admissibility of the report was affected by its alleged self-serving character.

The report was an entry made contemporaneously with the facts recorded in the usual course of business and in the performance of a duty by a person since deceased having means of knowledge, and was admissible as an exception to the hearsay rule, under the principles of *Lassone* v. *Railroad*, 66 N. H. 345, 354, 359. It appeared by evidence, *aliunde* the report, that Dr. Stillings examined the plaintiff on the day of his injury and seasonably made and filed his report thereof. It could be found that the examination and report were made according to the customary practice of the railroad's surgeon, and pursuant to the entrant's duty in the regular course of his employment for the defendant. It should be borne in mind, however, that we are not here considering entries of parties and their clerks under the ancient shop-book rule. We are dealing with the broader principle of the admission of entries of third persons since deceased, in the regular course of business, under which the element of the inherent distrust (3 Wig., Ev., s. 1518 (2); *Towle* v. *Blake*, 38 Maine 95, 98; *Eastman* v. *Moulton*, 3 N. H. 156, 157; *Harris* v. *Burley*, 10 N. H. 171, 173; *Richardson* v. *Emery*, 23 N. H. 220, 223) of a party's own evidence is eliminated. Some confusion will, therefore, be avoided if we exclude from consideration the question of the identity of the defendant as the employer of the plaintiff and of the entrant at the date of the entry. Under the doctrine of the *Lassone* case it is wholly immaterial that the plaintiff suffered the injury which was the subject of the report while in the employ of this defendant rather than during his service for another. In the application of the doctrine the case stands precisely as if the injury of 1915 had occurred while the plaintiff had been in the service of an employer other than the defendant, and the doctor's report had been made to such employer under like circumstances. In other words the principles of that case, in their application here, are not based upon any relationship or privity of the entrant to the parties to the action. It is immaterial whether the entry was made in the course of the entrant's personal business (*Hutchins* v. *Berry*, 75 N. H. 416, 419; *Lassone* v. *Railroad*, *supra*) or while engaged in the performance of the business of another (*Roberts* v. *Rice*, 69 N. H. 472, 474) so long as such relation is not such as to affect the circumstantial trustworthiness of the statement by demonstrating a positive motive to misrepresent. 3 Wig., Ev., s. 1527.

To qualify an entry under the exception to the hearsay rule there must be a necessity for its admission as evidence, and the circum-

stances under which it was made must be such as to guarantee that the statements therein are fairly trustworthy. *Roberts* v. *Company*, 78 N. H. 491, 494; 3 Wig., Ev., *s.* 1420 *et seq.* The necessity principle is satisfied by proof of the death of the entrant. 3 Wig., Ev., *s.* 1521; *Roberts* v. *Company, supra.* The circumstantial trustworthiness of the report is supported by the fact that the examination, and the entry thereof, were made in the regular course of the business he had undertaken to perform and for the accuracy and truthfulness of which he assumed responsibility, there being an absence of evidence of any controlling motive to misrepresent. 3 Wig., Ev., *ss.* 1522, 1527; *Welsh* v. *Barrett*, 15 Mass. 380, 386; *Nicholls* v. *Webb*, 8 Wheat. 326; *Bridgewater* v. *Roxbury*, 54 Conn. 213, 217; *Abel* v. *Fitch*, 20 Conn. 90, 96.

The claim that the report was a mere casual and isolated statement, like a letter, disregards the evidence that Dr. Stillings was the regular surgeon of the railroad and that his examination and report were made pursuant to the customary practice of the railroad to have such examinations and reports in all cases of accidental injuries. It was a record required by, and kept, in accordance with an established practice. The evidence discloses the existence of such a system of examinations and reports as to warrant the inference, and implied finding, of the trial court that the entries were made in a due course of business. 3 Wig., Ev., *s.* 1523, *note* 1. The fact that the record does not disclose the number and frequency of such entries by the defendant's surgeons in general, or by Dr. Stillings in particular, does not demonstrate the unreliability of the entry. The degree of regularity goes only to its weight as evidence in support of the trustworthiness of the recorded statements. The question of the fullfillment of the requirement of regularity presented a question in the first instance for the trial court. 3 Wig., Ev., *s.* 1525; *Pratt* v. *White*, 132 Mass. 477, 478; *Dow* v. *Sawyer*, 29 Me. 117, 119; *Wheeler* v. *Walker*, 45 N. H. 355, 360. If there was evidence tending to support it the conclusion of the trial justice "will not be interfered with unless clearly wrong." *Wilcox* v. *Downing*, 88 Conn. 368; *Riley* v. *Boehm*, 167 Mass. 183 and cases cited.

Moreover, the regularity of an entry constitutes only one of a variety of circumstances, sanctioned by judicial practice, acceptable as presumptive evidence of the accuracy and truthfulness of the entry and as a practical substitute for the conventional test of cross-examination. 3 Wig., Ev., *ss.* 1422, 1522; *Roberts* v. *Company, supra*, 495. See 2 Ill. L. B. 65, 91. While under the American rule there is

no requirement that the entry shall have been made in the performance of a duty to another (3 Wig., Ev., *s.* 1524; Chamberlayne, Ev., *ss.* 2872, 2876; *Hutchins* v. *Berry, supra*), the fact that it was so made supplies one of the strongest motives to accuracy which could be adduced in support of its probable trustworthiness as a true record of the recorded facts. 3 Wig., Ev., *s.* 1522 (3); Chamberlayne, Ev., *s.* 2876; *Roberts* v. *Company, supra,* 495. The findable fact that Dr. Stillings in his capacity as the regular surgeon of the defendant had undertaken to make the examination and a report thereof, and thereby become answerable for their accuracy, tends strongly to support their reliability. The circumstances were such that a sincere and accurate statement would naturally be made without any plan of falsification. 3 Wig., Ev., *s.* 1422. "What a man has said when not under oath, may not in general be given in evidence, when he is dead: . . . But what a man has actually done and committed to writing, when under obligation to do the act, it being in the course of the business he has undertaken, and he being dead; there seems to be no danger in submitting to the consideration of the jury." *Welsh* v. *Barrett, supra*; *Lassone* v. *Railroad, supra,* 354. "We think it a safe principle, that memorandums made by a person in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done." *Nicholls* v. *Webb, supra,* 337; *Inhabitants of Augusta* v. *The Inhabitants of Windsor,* 19 Me. 317, 321; Thayer, Cases on Evidence (2d *ed.*), 563–569.

There is no basis for the plaintiff's contention that the report contained collateral and independent matters which the entrant was under no duty to report. The facts asserted in each instance appear to have been directly responsive to the question propounded upon the prepared blank and to have been limited to its requirements. As respects the nature and extent of the injuries suffered in 1915, the language of the entry purports to record the personal observations of the entrant. If, however, it could be inferred that the report in this particular was based in part upon complaints by the plaintiff of his symptoms and sufferings from the exhibited injuries such complaints were admissible as original evidence thereof (*Howe* v. *Plainfield,* 41 N. H. 135, 136; *Perkins* v. *Railroad,* 44 N. H. 223; *Towle* v. *Blake,* 48 N. H. 92, 96; *Taylor* v. *Railway,* 48 N. H. 304, 309), and, like the facts disclosed by ocular demonstration, could be proven by the declaration of the examining surgeon. As respects the reported

statements of the plaintiff of the circumstances of the 1915 accident, it may be conceded that they were inadmissible in proof of the cause of that injury. The plaintiff having, however, testified at the trial to circumstances of the earlier accident which tended to disprove that it could have produced the symptoms in suit, his contradictory statements to Dr. Stillings were directly material on the issue of his credibility. His case to quite a large extent depended upon his own testimony, and his credibility was a material and important issue. *Watson* v. *Twombly*, 60 N. H. 491, 492; *Drew* v. *Wood*, 26 N. H. 363, 365. That he had given an inconsistent account of the earlier accident, whether true or false, impugned his trustworthiness as a witness. The fact that the assertions in the entry were capable of misuse laid a basis for a request for a limitation of the use of the statement, but did not accomplish a mistrial. It is to be presumed that proper instructions were given. *Hill* v. *Carr*, 78 N. H. 458, 461. The danger of incorrect transmission of the plaintiff's statement, if such a risk may be regarded as one of the reasons for the hearsay rule (3 Wig., Ev., s. 1363), is not the test of admissibility. If the entry be otherwise admissible, such risk goes only to the weight of the evidence (*Lane* v. *Hill*, 68 N. H. 275, 281), as do the counter facts that the report was in writing, and purports to state the exact language of the plaintiff.

The entry by red marks upon the diagram to show the location of the injury, being fully interpreted by the terms of the printed directions to the entrant, are not objectionable for form. The language and form of an entry are not of controlling importance so long as they are fairly intelligible and distinctly communicate the fact offered in evidence. 3 Wig., Ev., s. 1556; Chamberlayne, Ev., s. 2898; *Cummings* v. *Nichols*, 13 N. H. 420, 425; *North Bank* v. *Abbot*, 13 Pick. 465, 472; *Remick* v. *Rumery*, 69 N. H. 601, 603; *Swain* v. *Cheney*, 41 N. H. 232, 235.

As respects the time of the entry, the report bears, in the surgeon's handwriting, the date of the accident which was the admitted date of the examination. The contemporaneousness of the entry is not affected by the fact that the report did not reach the files of the defendant, as disclosed by the stamp, until two days later. The time consumed seems not unreasonable, and carries no implication which materially diminishes the trustworthiness of the report. "The rule fixes no precise time; each case must depend on its own circumstances." 3 Wig., Ev., ss. 1526, 1550.

It would seem to be a work of supererogation to review the authorities supporting the doctrine of *Lassone* v. *Railroad*, *supra*, which have there been exhaustively gathered and fully analyzed and digested.

17 L. R. A. 525 *note;* 43 Cent. Law J. 114, 116. Whether the doctrine, as there interpreted, be regarded as an added exception to the hearsay rule, or as a natural development and extension of an older exception (Thayer, Prelim. Treat. on Ev., 521; 2 Ill. L. B. 65, 67, 73), it has become an accepted part of our law, and has several times been reaffirmed. *Roberts* v. *Rice, supra; Hutchins* v. *Berry, supra; Roberts* v. *Company, supra; Twitchell &c. Co.* v. *Johnson,* 78 N. H. 517, 518. See *Davis* v. *Company* 181 Fed. Rep. 10, 12, 14.

It would seem that the report was also admissible as the declaration of a person now deceased having the means of knowledge without interest to misrepresent, it being the best evidence of which the case is capable. *Lane* v. *Hill,* 68 N. H. 275, 281; *Lawrence* v. *Tennant,* 64 N. H. 532, 540; *Keefe* v. *Railroad,* 75 N. H. 116, 119; *Hutchins* v. *Berry,* 75 N. H. 416, 419; *Roberts* v. *Company,* 78 N. H. 491, 495. See *Morrison* v. *Noone,* 78 N. H. 338, 342.

*Exceptions overruled.*

All concurred.