No. 13,564.

ZELLER ET AL. *v*. TAYLOR.
(37 P. [2d] 391)

Decided October 22, 1934.

Mr. RILEY R. CLOUD, Mr. MATT J. KOCHEVAR, Mr. JOHN W. ELWELL, for plaintiffs in error.

Mr. FRANK R. HALL, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, delivered the opinion of the court.

J. J. ZELLER and Joe McCallister, copartners doing business as Tivoli Union Company, referred to herein as the defendants, seek the reversal of a judgment obtained against them by Robert W. Taylor, referred to herein as the plaintiff. The trial was to the court without a jury.

The action was to recover for beer sold and delivered by the Weicker Transfer and Storage Company. The claim was assigned by that company to Taylor. The beer was purchased in the name of Tivoli Union Company by one Fred Hared. The only question for consideration is whether the trial court erred in holding that Hared had authority to act for the defendants in making the purchase.

The defendants both lived in Raton, New Mexico, Zeller being in the dry cleaning business and Mc-Callister in the slaughterhouse business. During the summer of 1933 they formed a partnership as Tivoli Union Company to engage in the wholesale beer busi-

ness in Trinidad. A place of business in that city was secured, signs reading "Tivoli Union Co." were placed on the premises and the business proceeded. The license was in the names of Zeller and McCallister. They, however, continued to live and conduct their separate businesses in Raton. Zeller paid but little attention to the partnership affairs, leaving them almost entirely to McCallister. The latter visited Trinidad "probably once, or maybe twice a week; just over and right back." The only person left in charge of the place of business was Hared. Zeller testified that they employed Hared to take charge of the business, but that he was not authorized to "buy any other beer but Tivoli." On the premises, however, there were signs advertising other brands of beer, and beer of various brands was stored on the premises. A witness testified that he stayed in the place of business one day at the request of Hared, when the latter was obliged to be absent, and that McCallister asked him to tell Hared to buy "certain beers" for a truck that .was coming. "Q. Was there anything included in the order outside of the Tivoli beer? A. Yes, sir; practically all [the brands were] foreign beers." The Trinidad branch manager of the Morey Mercantile Company, which handled Braumeister, Budweiser, Country Club and Old Heidelberg beer, testified that Zeller came into his office once and asked the prices of beer; that on one occasion witness telephoned McCallister and asked him to call at the office, and told him that "While we were doing business, selling merchandise to his manager, Fred Hared, I had never met him [McCallister]," and that "I would like to discuss the matter with him." "Q. What, if anything, did he say about your doing business with Hared? A. He had nothing to say on that." There was evidence to the effect that Hared sold beer for Tivoli Union Company, paid light and telegraph bills, endorsed checks payable to the company, and signed orders and receipts in the name of the company, by himself as agent, and also evidence tending to show that he

bought beer for Tivoli Company. Hared had no license entitling him to buy and sell beer. During the summer he bought in the name of Tivoli Union Company from 500 to 700 cases of beer of the Weicker Company; and also bought beer from others. It is inconceivable that the defendants, or at least McCallister, did not know what was going on. The trial court was warranted in finding that they did know. In *Little Pittsburg Con. Min. Co. v. Little Chief Con. Min. Co.,* 11 Colo. 223, 17 Pac. 760, we held that the scope of an agent's employment is to be determined, not alone from what the principal may have told the agent to do, but from what he knows, or, in the exercise of ordinary care and prudence, ought to know, the agent is doing in the transaction. In *Witcher v. Gibson,* 15 Colo. App. 163, 61 Pac. 192, the court said: "It is always incumbent on a principal to conduct his business with care. He is not bound to watch his agent, nor bound to be constantly on the lookout to see that he is not cheated. But he is certainly obligated to keep himself advised of the course of his business, and to know whether his agent is using the specific authority which is granted him, and if he is not, to advise the parties with whom he is dealing to no longer transact such business with him." Although the facts in the Witcher case were not identical with the facts in the present case, that language is applicable here.

An agency and the extent of the agent's authority may be proved by circumstances. *Burnell v. Morrison,* 46 Colo. 533, 105 Pac. 876.

The testimony, in important particulars, is in direct conflict, but there is ample evidence to support the court's finding that, in purchasing the beer in the name of Tivoli Union Company, Hared was the agent of that company and had authority to make the purchase in its behalf.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK concur.