55 P.(2d) 743

**JAMESON et al. v. FIRST SAVINGS BANK & TRUST CO. OF ALBUQUERQUE et al.**

**DE OTERO v. BENNET et al.**

**No. 4105.**

Supreme Court of New Mexico.

Feb. 28, 1936.

Marron & Rogers, of Albuquerque, for appellant.

John F. Simms and Augustus T. Seymour, both of Albuquerque, for appellees.

HUDSPETH, Justice.

This is an appeal by Josefita M. de Otero, executrix of the last will and testament of Eduardo M. Otero, from the judgment dismissing her petition for an order requiring Lester Cooper and W. H. Powell, coreceivers of the First Savings Bank & Trust Company, to pay to her dividends on a claim allowed to the estate of Eduardo M. Otero, deceased. The trial court decided that an assignment of the claim executed by Raymond R. Ryan, the attorney of the executrix, was valid.

The court found:

1. Raymond R. Ryan, a member of the bar of the Supreme Court of New Mexico, was employed by Josefita M. de Otero, executrix of the estate of Eduardo M. Otero, as attorney for the executrix, and conducted the legal matters of the estate for the executrix from the time the estate was opened until the death of Judge Ryan on the 3d day of June, 1934.

2. That, during the time he was the attorney for the estate, Judge Ryan conducted many important matters both in court and in the matter of advising and counseling the executrix about the affairs of the estate, and the executrix relied upon his advice and instructions as her attorney.

3. At the time of the failure of the First Savings Bank & Trust Company of Albuquerque, N. M., the estate of Eduardo Otero had a deposit of $28,866.91 in that bank; the executrix failed to prove up her claim against the receivers for the deposit before the 31st of December, 1933, although notified by the receivers to do this, and thereafter the time was extended, and in February, 1934, Judge Ryan proved the claim, signing the name of the executrix by himself as attorney, verified it and received a receivers' certificate of proven claim in that amount which he retained among the files of the estate in his office.

4. Judge Ryan received in February, 1934, and in April, 1934, checks to the executrix for 10 per cent. dividend, indorsed them in the name of the executrix and deposited them in the account of the executrix at the Albuquerque National Trust & Savings Bank.

5. In the latter part of April, 1934, Mr. Charles Mann was purchasing claims against the First Savings Bank & Trust Company and approached Judge Ryan to purchase the claim of the Otero estate; Judge Ryan told him he had no authority to sell the estate's claim at that time, but would see and communicate with the exec-

utrix about the matter and would make an investigation touching the probable value of the claim in the meantime; about a week later Mr. Mann saw Judge Ryan, who stated that he had not yet heard from the executrix, Mrs. Otero, but that he had asked her to come in from Los Lunas to Albuquerque and go over the matter with him.

6. Judge Ryan kept in his own handwriting on his desk in his office at Albuquerque a daily memorandum book, in which it was his regular custom to make entries of important matters transpiring during each day.

7. That, on the 11th day of May, 1934, at 11:11 a. m. Judge Ryan called up the executrix at Los Lunas on the telephone, and she gave her assent to a sale by him for her of the receivers' certificate for 25 cents on the dollar, which with the 5 per cent. originally withdrawn and two dividends of 10 per cent. received by the executrix aggregated a 50 per cent. liquidation of the claim.

8. After talking to the executrix on the telephone, Judge Ryan called up Mr. Mann shortly before lunch on the 11th of May, 1934, and requested that Mr. Mann meet him between 1:30 and 2 that afternoon, at which time Judge Ryan assigned the certificate "Josefita M. de Otero, Executrix, by R. R. Ryan, attorney," leaving the name of the transferee blank, received the consideration of 25 per cent. and delivered the certificate to the agent of the Albuquerque Investment Company and W.

T. Morrow, they having paid for the same as follows: Check of George Savage for Albuquerque Investment Company, $6,750; check of John F. Simms, trustee for W. T. Morrow, $466.73, total—$7,216.73, which was 25 per cent. of the face value of the certificate as agreed.

9. Judge Ryan immediately indorsed the checks and placed them in the account of the executrix in the Albuquerque National Trust & Savings Bank.

10. Judge Ryan, acting in the matter as attorney for the executrix, had full authority and consent of and from the executrix to make the sale and indorsed the certificate as the agent of the executrix.

Appellant presents three questions for review: First, the question whether the court erred in finding that Judge Raymond R. Ryan had express authority to assign the claim of the Otero estate; second, whether the court erred in overruling the appellant's objections to the admission in evidence of the diary of Judge Ryan; and, third, whether the court erred in admitting in evidence the alleged declarations of Judge Ryan to the witness Charles Mann.

The questions as to rulings on evidence may conveniently be first considered. The first ground of objection to the admission in evidence of the memorandum book or diary referred to in finding No. 6, quoted above, was that entries in private diaries come within no exception to the hearsay rule. This memorandum book was a part of the office records of Judge Ryan and in daily use. The entry in question was made

in the regular and customary course of his business; it was not a mere private diary. The entry seems to fall within the rule.laid down in Fisher v. Mayor, 67 N.Y. 73: "There is no absolute duty resting upon an attorney to make such an entry, but this is not essential, it is sufficient if the entry was the natural concomitant of the transaction to which it relates, and usually accompanies it. (1 Green. Ev., § 115; Leland v. Cameron, 31 N.Y. 115.) "

3 Wigmore on Evidence (2d Ed.) p. 272, § 1523, states: "It would probably exclude, for instance, a diary of doings kept merely for one's personal satisfaction; but it would not exclude any regular record that was helpful, though not essential or usual in the same occupation as followed by others."

The following appears in 2 Nichols Applied Evidence, p. 1957: "Entries part of res gestæ. Entries in books kept by third persons, not parties to the suit, are admissible after the death of the party making the entries, where the entries are contemporaneous with the principal fact sought to be proved and form a link in a chain of events, and are a part of the res gestæ."

In Radtke v. Taylor, 105 Or. 559, 210 P. 863, 870, 27 A.L.R. 1423 the court said: "It would be difficult by any course of logical reasoning to declare that the shopbook rule is recognized in this state and at the same time say that section 790, Or. L., affects books of accounts when used under the shopbook rule. Section 790, Or. L., traces its origin to a source entirely separated from the shopbook rule. The general rule is that entries of a third person of transactions between such third person and others not parties to the litigation, or one of the parties litigant, are not admissible because they are hearsay and res inter alios acta; but, under one of the exceptions to this general rule, entries against the interest of the person making them, the entrant being dead, are admissible. 2 Enc. of Evi. 667–670. Another exception to the hearsay prohibition recognized by the common law was the established doctrine which permitted the reception of written entries made by deceased persons in the usual course of professional or official business or in the discharge of some duty. This doctrine rests upon its own basis, and has its own history. It is treated by text-writers as a rule which is separate and apart from the shopbook rule, and, although these two rules have points of similarity, in that each possesses some of the same features, yet neither rule is connected with or dependent upon the other. There was a good reason for the enactment of section 790, Or. L., and that reason is found in the fact that it was the plain purpose of the Legislature to codify the rule governing entries of third persons against interest, and especially to limit the scope of the common law rule governing entries made by deceased persons in the course of professional or official business, or in discharge of some duty, as that rule was applied in America."

The Supreme Court of New Hampshire, in Lebrun v. Boston & M. R. R., 83 N.H. 293, 142 A. 128, 132, stated:

"To qualify an entry under the exception to the hearsay rule, there must be a necessity for its admission as evidence, and the circumstances under which it was made must be such as to guarantee that the statements therein are fairly trustworthy. Roberts v. Claremont Power Co., 78 N.H. 491, 494, 102 A. 537; 3 Wig. Ev. § 1420 et seq. The necessity principle is satisfied by proof of the death of the entrant. 3 Wig. Ev. § 1521; Roberts v. Claremont Power Co., supra. The circumstantial trustworthiness of the report is supported by the fact that the examination, and the entry thereof, were made in the regular course of the business he had undertaken to perform and for the accuracy and truthfulness of which he assumed responsibility; there being an absence of evidence of any controlling motive to misrepresent. 3 Wig. Ev. §§ 1522, 1527; Welsh v. Barrett, 15 Mass. 380, 386; Nicholls v. Webb, 8 Wheat. 326, 5 L.Ed. 628; Bridgewater v. Roxbury, 54 Conn. [213] 217, 6 A. 415; Abel v. Fitch, 20 Conn. [90] 96. * * *

"Moreover, the regularity of an entry constitutes only one of a variety of circumstances, sanctioned by judicial practice, acceptable as presumptive evidence of the accuracy and truthfulness of the entry, and as a practical substitute for the conventional test of cross-examination. 3 Wig. Ev. §§ 1422, 1522; Roberts v. Claremont Power Co., supra [78 N.H. 491] 495, 102 A. 537. See 2 Ill.L.B. 65, 91. While under the American rule there is no requirement that the entry shall have been made in the performance of a duty to another (3 Wig. Ev. § 1524; Chamberlayne, Ev. §§ 2872, 2876; Hutchins v. Berry, supra [75 N.H. 416, 75 A. 650])."

In Mercer v. Frank Hitch Lumber Co., 173 N.C. 49, 91 S.E. 588, 590, the court said: "It is well understood that written entries or memoranda, shown to have been made by a third person in the regular course of business, when otherwise relevant, may be admitted in evidence on the trial of an issue and as substantive testimony, but in order to their proper reception in this jurisdiction, and unless in strictness a part of the res gestæ, it must be made to appear that the person making them, sometimes styled the entrant, is dead at the time of trial or unavailable as a witness; that the entries were made in the line of some duty or custom pursued in the course of entrant's business; that they are cotemporaneous with the act to be proved; and that the entrant had knowledge of the relevant facts which they purport to contain. Ray v. Castle, 79 N.C. 580; Chaffee v. United States, 85 U.S. [18 Wall.] 516, 21 L.Ed. 908; New Jersey Zinc Co. v. Lehigh Zinc Co., 59 N.J.Law, 189, 35 A. 915; Jones on Evidence (2d Ed.) p. 401, § 319 (original section 323); 4 Chamberlayne, Modern Law of Evidence, §§ 2884, 2885, 2895, et seq."

The probability of a falsehood being accepted as true by reason of this class of evidence seems remote. This point is ruled against appellant.

■ The second objection to the admission of the memorandum book, i. e., that agencies or the authority of an agent cannot be proved by extrajudicial statements of the agent, is directed also to the testimony of the witness Mann as to the declarations made to him by Judge Ryan. The executrix testified that Judge Ryan was her general representative in the matters of the estate, and appellant admits that conversation between principal and agent may be introduced in evidence for the purpose of proving agency. Badger v. Cook, 117 App. Div. 328, 101 N.Y.S. 1067.

In State v. Kelly, 27 N.M. 412, 202 P. 524, 533, 21 A.L.R. 156, Mr. Chief Justice Roberts, speaking for the court, said: "It is argued that admissions, statements, and declarations of an agent are not admissible to prove agency, and this proposition is correct. There must first be prima facie proof of agency before such declarations or statements are admissible for any purpose. While agency may not be proved by the extrajudicial statements and declarations of one pretending to act as agent the fact of agency when it rests in parol, may be established on the trial by the testimony of the agent himself. See note to the case of Dispatch Printing Co. v. National Bank of Commerce, 5 A.R.C. 218. The note will be found on page 224. Many cases are cited in support of the proposition, and we know of nothing to the contrary. Another general rule may be stated, which is that the existence of an agency may be shown by, or inferred from, circumstantial evidence."

■ Aside from the inhibition against reliance upon hearsay testimony about an agent's extrajudicial statements on the subject as proof of agency, there can be no doubt that statements of agents whether authorized or not are admissible. 2 Restatement of the Law of Agency, § 289, is, in part, as follows:

"Evidence of statements of agents, whether or not such statements are authorized, is admissible in favor of and against the principal, if admissible under the general rules of evidence as to the admissibility of such statements by persons not agents.

"Comment: * * *

"c. *Statements of state of mind.* Evidence of statements by an agent introduced in order to show the purpose for which he did an act or to show his knowledge or state of mind is admissible in favor of and against the principal under the rules relating to the introduction of evidence for this purpose. Statements by an agent are not excluded because made by an agent. If his knowledge or condition of mind or purpose is relevant to the cause of action which is being brought, either party may introduce evidence relevant to show this."

■■ The rule that direct testimony is not necessary to establish an agent's authority, if, from attending facts and circumstances, authority may be implied, is generally recognized. And after prima facie proof of agency, the better rule is that extrajudicial declarations of an agent

are admissible. Courts assign different reasons, more than one of which might fairly be assigned in this case. In Carter v. Carr et al., 139 Cal.App. 15, 33 P.(2d) 852, 857, a case in which the facts are somewhat similar to the case at bar, the court said: "It must, we think, be conceded that the fact of agency may not be established by proof of purely extrajudicial statements of one who assumes or pretends to act as an agent and that evidence of such statements is incompetent and inadmissible for such purpose. Spoon v. Sheldon, 27 Cal. App. 765, 768, 151 P. 150. It does not follow, however, that evidence of such statements is inadmissible for any purpose. It has been decided, for example, that, when it has been shown that a person was given actual or ostensible authority to act for another in a particular matter, any declarations made by the agent at the time of the transaction of the business intrusted or apparently intrusted to him, and relating to such business, is admissible as a part of the res gestæ. Hubback v. Ross, 96 Cal. 426, 430, 31 P. 353. It is settled that agency may be established by circumstantial evidence. Bergtholdt v. Porter Bros. Co., 114 Cal. 681, 688, 46 P. 738. It often occurs that direct proof of the fact of agency is impossible. This was true in the instant case. Both appellants denied under oath that Carr was the agent of the Seaboard Dairy Credit Corporation. There were circumstances, nevertheless, which tended to show that Carr was in fact the agent of the corporation and that in dealing with the respondent he acted as the agent of the corporation although he made the contract in his own name. It is nowhere contended that Rutledge was not the agent of Carr. The manner of payment for the cattle purchased by Rutledge in Oregon was a circumstance which pointed strongly to the fact that Rutledge's principal was in fact the agent of the corporation. So far as we can see, the declarations of Carr and those of his admitted agent with reference to the fact that Carr represented the corporation stand on the same footing and were properly admitted as part of the res gestæ. Furthermore, evidence that Carr and Rutledge had made statements to the effect that the former was the agent of the corporation was properly admitted as impeaching Carr's testimony that he was not the agent of the corporation and as tending to show that respondent, in his dealings with Carr, understood that he was dealing with Carr as an agent and not as a principal. Lawson v. Steinbeck, 44 Cal.App. 685, 186 P. 842. Finally, it should be observed that this is not a case where the only evidence which tended to show that Carr was the agent of the corporation consisted of the evidence under consideration. There was other evidence competent and material which pointed strongly to the fact of agency. It was wholly circumstantial. The various conversations which occurred between Rutledge and the respondent and between Carr and the respondent were part of the entire circumstantial background of the case which the triers of fact were required to examine for the purpose of discovering whether any liability could

properly be fastened upon the corporation because of the representations made to the respondent by Carr and his agent Rutledge."

And in Adams v. Barron G. Collier, Inc., 73 F.(2d) 975, 979 (C.C.A.) the court said: "It is well settled that declarations of an agent are incompetent to prove agency; but, where the agency has been established by independent evidence, such declarations are competent in corroboration and to show that the agent was not acting on his individual account. Union Guaranty & Trust Co. v. Robinson (C.C.A.) 79 F. 420; Drabek v. Wedrickas, 182 Minn. 217, 234 N.W. 6."

Prof. Wigmore, commenting upon the phrase "res gestæ," quotes Prof. James Bradley Thayer, American Law Review XV, 5, 81: "In Swift's 'Digest of the Law of Evidence in Civil and Criminal Cases,'—the earliest American treatise,—printed in 1810, the phrase occurs, at p. 127, in stating when the admission of an agent is receivable as against his principal: 'What is said by the agent relating to such transaction, while acting under such authority, will be received as evidence against the principal, as part of the "res gestæ." ' " 3 Wigmore on Evi. (2d Ed.) p. 774.

In Roh v. Opocensky, 126 Neb. 518, 253 N.W. 680, 681, the court states:

"1. Res gestæ means 'things done' at the transaction being investigated, and includes not only the facts and circumstances of the occurrence, but also the declarations made under the immediate spur of, and as a part of, the main transaction. Collins v. State, 46 Neb. 37, 64 N.W. 432. Whenever the bodily or mental feelings are material, the expressions are the natural reflexes of what it might be impossible to show by other testimony. * * *

"The principles of evidence governing the admission of res gestæ have been broadened and developed by an effort to afford the triers of fact all reasonable means of ascertaining the truth, instead of withholding from them all information possible by the rigid application of certain rules of exclusion. The question is not now, how little, but how much, logically competent proof is admissible. 10 R.C.L. 975, § 158. Stukas v. Warfield-Pratt-Howell Co., 188 Iowa, 878, 175 N.W. 81; Roach v. Great Northern R. Co., 133 Minn. 257, 158 N.W. 232; Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87; Ward v. Lane, 189 Ala. 340, 66 So. 499; State v. Evans, 89 W.Va. 379, 109 S.E. 332.

"Res gestæ, although in fact hearsay evidence, is admitted because it is so closely connected with the main transaction as to be a part of it. Spontaneous exclamations, uttered impulsively, and so closely connected with the transaction as to exclude the idea that they were made with deliberation and purpose, are properly admitted as res gestæ evidence.

" 'As independent explanatory or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts,

and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury.' Quotation from Travelers' Ins. Co. v. Mosley, 8 Wall. 397, 404, 19 L.Ed. 437; Hatzakorzian v. Rucker-Fuller Desk Co., 197 Cal. 82, 239 P. 709, 41 A.L.R. 1027. * * *

"The res gestæ declarations of an agent are clearly admissible against his principal if made while he is engaged in the business of the principal."

In State v. Retail Credit Co., 25 Ala.App. 568, 151 So. 474, 475, the court said: "The facts and circumstances are sufficient, in our opinion, to show prima facie that Wilhelm was the appellee's agent and engaged in transacting business for it. Where the fact of agency is shown by independent evidence, direct or circumstantial, the declarations of an agent as to the nature and extent of his agency are admissible. Birmingham Mineral Railroad Co. v. Tennessee Coal, Iron & Railroad Co., 127 Ala. 137, 28 So. 679."

Appellant's able counsel strenuously argue that even if the exception to the hearsay rule were as broad as stated in the foregoing quotations, this case would not fall within it for the reason that the evidence aside from the memorandum book and the extrajudicial declarations made by Judge Ryan to the witness Mann is insufficient upon which to base a finding that there was prima facie evidence of agency in Judge Ryan to execute the assignment. It is admitted that the assignment of the claim required the exercise of discretionary power by the executrix; and the trial court found that the burden was upon the appellee to establish by a preponderance of the evidence that Judge Ryan had express authority from the executrix to execute the assignment. On the other hand, the appellant admitted that Judge Ryan was her general representative in the matters of the estate, and the learned trial judge in his opinion stated: "It is impossible to believe that Judge Ryan twice telephoned Mrs. Otero on that date with respect to the sale of a mule belonging to the estate for the price of $50.00, but that he assigned the receiver's certificate in the face amount of over $28,000.00 without having discussed the assignment with her. The Court believes from all the testimony that the assignment was made by Judge Ryan as the agent of Mrs. Otero with her full knowledge and consent. As hereinbefore stated, this case is an exceptional one. Its outcome depends upon the truth as to the telephone conversations or lack of the telephone conversations between Mrs. Otero and Judge Ryan."

In the case of Mennel Milling Co. v. Acme Pie Co., 268 Mich. 457, 256 N.W. 482, 483, the court said: "The question of the authority of the salesman to bind the plaintiff company was properly submitted to the jury, which found in favor of defendant. The evidence regarding the telephone call by Amendt to plaintiff's sales manager was sufficient to sustain a finding of the agent's authority."

Abbott's Proof of Facts (3d Ed.) par. 7, is as follows: "Although the admissions

and declarations of a person, even if made at the time of the act, are not evidence (except as against himself) of the facts of his agency, nor of its scope, unless connection with the alleged principal is shown, yet slight evidence is sufficient to show connection; and when any competent evidence of the fact has been received, the declarations of the alleged agent as to the fact of his agency, or its scope, made in the course of the transaction in question, are competent."

2 C. J. 929, par. 695, states: "While the declarations of an agent are themselves incompetent to prove agency, if the agency is otherwise prima facie proved, they become admissible in corroboration, where they constitute a part of the res gestæ and were made at the time of the transaction in question. Thus where the agency has been established by independent evidence, the declarations of the agent are competent to show that he acted as agent and not on his own individual account, or to show the nature and extent of his authority."

█ See, also, Lemcke v. A. L. Funk & Co., 78 Wash. 460, 139 P. 234, Ann.Cas. 1915D, 23; Zeller et al. v. Taylor, 95 Colo. 503, 37 P.(2d) 391. The great weight of modern authority, moreover, incline toward leaving the question of admissibility of this class of evidence to the discretion of the trial court.

Judge Dibell's statement in Roach v. Great Northern R. Co., 133 Minn. 257, 158 N.W. 232, 233, is often quoted: "There is no precise rule determining just when statements are part of the res gestæ. The general doctrine is well enough understood; its application is difficult. It may accurately enough be said that there is no specific rule of precise application. In each case the application must depend upon the particular facts. * * * In reviewing the trial court's ruling this court defers to its determination of the preliminary facts bearing upon the propriety of receiving the testimony. To this extent its admissibility is within the sound judgment of the trial court."

█ The last rule quoted, as to the determination of the preliminary facts bearing upon the propriety of receiving the testimony, appeals to us as sound. Under the circumstances, we do not find that it was error to admit this evidence.

The first assignment of error challenges a finding of fact. It was the province of the trial court to weigh the evidence and determine the facts and circumstances shown to exist. The testimony is in conflict on the vital issue, but there is evidence which, to quote the trial court, "forges an unbroken chain," and fully justifies the finding that Judge Ryan had express authority to assign the claim.

Finding no error in the record, the judgment will be affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.