## No. 13,627.

### DENVER TRAMWAY CORPORATION v. RUMRY.
(52 P. [2d] 396)

Decided November 25, 1935.

Mr. W. A. ALEXANDER, Mr. CECIL W. DRAPER, Mr. GERALD HUGHES, of counsel, for plaintiff in error.

Mr. FLOR ASHBAUGH, Mr. HORATIO S. RAMSEY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was defendant below, where upon trial to a jury, judgment was entered against it in the sum of $1,000 for damage to crops of defendant in error growing on land flooded by waters from Bear Creek, on July 7, 1933. It is here on error asking that the judgment be reversed. According to required election, plaintiff, defendant in error here, stood upon an action for breach of a contract (Exhibit A), concerning a diversion dam across Bear Creek. Reference will be made to the parties herein as plaintiff and defendant, as they appeared at the trial.

Having its source in the mountains, Bear Creek emerges therefrom near the village of Morrison and

empties into the Platte river a few miles to the east. About one-fourth mile above its mouth, water for irrigation is diverted from the creek by means of the dam before mentioned, and had been so diverted for a long period of time prior to 1912. Plaintiff's land, about nine acres, lies above the dam and adjacent to the creek. This land, and the crops thereon, was inundated July 7, 1933, when a disastrous flood in the creek occurred, causing loss of life and great property damage, destroying a part of a public highway in the mountains and flooding the lowlands along the creek from the Platte river to the foothills. Plaintiff claimed that the mentioned dam caused the damage. Fifty per cent of the water diverted by this dam is used on small garden tracts and the other fifty per cent upon a tract of land, about one mile from the point of diversion, known as the Bell ranch, and owned in 1912 by the Consolidated Securities and Investing Company. At that time, the Denver Tramway Company owned stock in the Consolidated Securities and Investing Company, and assisted in building a dam at the point of diversion, objection to the height of which was made by plaintiff and other land owners. Thereafter, in 1913, a large amount of water passed down the creek and flooded the land of plaintiff and others, and it was damaged by seepage. This brought on a controversy that was adjusted by a contract—dated in 1915—between plaintiff and Addie Hevener of the first part and the Consolidated Securities Company and Denver Tramway Company of the second part. This contract is Exhibit A and the pertinent part thereof is as follows:

"The parties of the first part hereby grant to the parties of the second part the right and privilege to construct and maintain, as now constructed, a pile and sheeting dam, with rock fill, across Bear Creek, where the same passes and runs through the property and premises of said P. Addie Hevener, at a point approximately opposite the location of the headgate or intake of what is known as the Bell Ditch, and also the right and privilege of con-

structing and maintaining on said property and premises the headgate or intake for the purpose of diverting the water of Bear Creek into said Bell Ditch, together with the right of the agents, servants and employees of the parties of the second part to enter upon said premises with such supplies, materials and appliances as may be required to construct and maintain said dam and headgate or intake and the ditch used in connection therewith.''

The paragraph next following approves the dam as then constructed and provides that, if any changes or alterations are made, those changes shall be such as not to increase the obstruction beyond that caused by the then existing dam.

The Tramway Company never owned any part of the dam known as the Bell dam, or any part of the Bell ditch or Bell ranch. It entered into the contract because it helped construct the original dam in 1912. The Tramway Company is a different organization from the Denver Tramway Corporation, plaintiff in error, which, being organized in 1925, purchased at a foreclosure ordered by the Federal district court, the assets of the Denver Tramway Company and later purchased the Bell ranch from the Consolidated Securities and Investing Company. On January 9, 1932, it leased this ranch to one Dardino, with the following express provision in the written lease:

''* * * The dam, headgate and ditches now serving the land described herein are accepted in their present condition, and it is hereby expressly understood and agreed by and between the parties hereto, that in no case will the lessor be liable for any expense which may be necessary either in material or labor to make either the dam, gates or ditches serviceable for use on the premises herein leased and that all repairs, additions and betterments which may be desirable or necessary in order to provide water for the premises herein leased shall be made at the sole expense of the lessee * * *.''

By the contract of 1915, plaintiff, in consideration of

$600 and other valuable considerations, released the Consolidated Securities and Investing Company and the Tramway Company and assigns, from all liability for damage occasioned by flood and seepage, so long as the dam was maintained in its then condition, or below the then existing height. The agreement took the form of a "grant" and "release." Neither company to the contract was required to construct a dam to any height, or at all, but was granted the right to do so within certain limits. Only a small part of the original dam remained in the spring of 1933, and it was insufficient to furnish a supply of water for the Bell ditch. The height of the dam apparently was much below that of 1915, when the contract was executed and it was at such height when the Bell ranch was leased by defendant, to Dardino. He, as lessee, together with others whose lands were served by the ditch, reconstructed the dam in the late spring of 1933, and this dam, plaintiff alleges, caused the damage. She does not contend that defendant either authorized or aided in the construction of the dam, but does contend that it was constructed by its tenant. It is not shown that any of defendant's servants, agents, or employees had the slightest participation in the construction of the dam in 1933. It is undisputed that it was constructed by defendant's tenant and other users. If plaintiff could recover in her action for breach of the contract—which question we will presently discuss—the circumstances considered, it could only be on the theory that it contained an implied covenant of indemnity, to save plaintiff harmless from defendant's acts, or the acts of third persons over which it had no control. No such implication can be permitted.

██ The relation of landlord and tenant exists by virtue of contract, and a tenant is not the agent of the landlord for any purpose, unless made so by specific agreement. In the present case defendant is not liable to plaintiff for the acts or omissions of its tenant, or for his torts with reference to the maintenance or construc-

tion of the dam. Repairs fall to the expense of the tenant unless otherwise provided by the lease, and the lease here, respecting such matter, contained the following provision:

"The dam, headgate and ditches now serving the land described herein are accepted in their present condition, and it is hereby expressly understood and agreed by and between the parties hereto, that in no case will the lessor be liable for any expense which may be necessary either in material or labor to make either the dam, gates or ditches serviceable for use on the premises herein leased * * *."

The defendant company did nothing, and did not contract with plaintiff to do anything, concerning the dam. It was, for a consideration, granted the right to do certain things, an excess of which, would be a trespass. If anything was done in excess of the grant or privilege, it was by the tenant of defendant. "A landlord is not deemed the principal of his tenant nor responsible for his torts, active or negligent, or for his failure to keep the premises in repair." 16 R. C. L. 1070.

There is no evidence to the effect that the dam was not in repair, or that it was in any way objectionable to plaintiff at the time defendant leased the premises to Dardino, in January, 1932.

"A lessor is not responsible for injury to the property or adjoining, or neighboring, owners caused by the negligent use by a tenant of the demised property or by the acts of third persons, where at the time of the letting the property is in proper repair." 36 C. J. 244, §959.

Plaintiff's theory seems to be that so long as defendant was given notice that the dam was above the proper height, it was its duty to reduce the height, and she relies upon Exhibit X, a letter dated June 26, 1933, directed to the Denver City Tramway and signed by plaintiff's attorney. The substance of the letter or notice is to advise that the dam had been raised contrary to the

30

contract and was a menace to the property owners above the dam. Some reliance also is placed by plaintiff upon a letter dated August 24, 1915, addressed to plaintiff from the chief engineer of the Denver City Tramway Company in which the engineer stated, apparently in response to a letter from plaintiff, that he had advised the tenant of the terms of the agreement and requested him to have the obstruction to which reference was made removed; that the tenant had informed the writer that the obstruction had been placed by other water users; "that if other obstructions are placed on this dam which are not in accordance with the agreement, I would request that you advise me in order that we may ascertain by whom it was done and notify them of the terms of the agreement." This letter is Exhibit W.

The giving of notice of the condition of the dam on June 26, 1933, adds nothing to plaintiff's case, unless it clearly appears that the defendant company had some duty to perform. As before stated, defendant's liability does not extend to and through the acts of its lessee or tenant, if such are shown to be trespass. If the dam was raised to an improper height, it is undisputed that it was by the acts of the tenant and other users of water from the ditch. Had defendant acted upon the notice and reduced the height of the dam, causing a loss and damage to other water users, by the resultant loss of water, then defendant might be required to respond in damages to such other users. The defendant was under no duty, under the circumstances of this case, to summarily abate the nuisance upon the notice given. Plaintiff alone was in a position to act to procure such an abatement.

■ Objection was made, and error assigned to the giving of the following instruction: "The court instructs the jury that the defendant is legally bound to observe all the terms and conditions of the contract of June 12th, 1915, entered into by its predecessors." As hereinbefore stated, the predecessor of defendant in this case was, by the contract of 1915, granted the right to do certain

things, and if it can be assumed—and we believe it cannot—that the contract required the defendant to do certain things, the evidence does not disclose any act committed or approved by the defendant in violation of the agreement either by itself or through any agent, employee or representative. The instruction, as given, would tend to influence the jury to hold the defendant liable for the act of anyone having a contractual relationship with it. The undisputed evidence is to the effect that the acts of the tenant in reconstructing the dam were without the knowledge, consent or authority of the defendant, and the conclusion must follow that the defendant did not violate any duty under the contract, if any it had concerning such reconstruction. The contract, for a consideration to plaintiff, was a release of any possible prior liability, and not the assumption on the part of defendant of a future liability, especially against the acts of others over which it had no control.

We believe defendant's motion for a directed verdict should have been sustained for the reasons herein expressed. The judgment is therefore reversed and the cause remanded with directions that the plaintiff's complaint be dismissed and judgment for the defendant be entered.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.