280 P.2d 701

Olive DALY, Appellant,

v.

Earl WILLIAMS, Appellee.

No. 5801.

Supreme Court of Arizona.

March 8, 1955.

V. L. Hash, Phoenix, for appellant.

Stockton & Karam, Phoenix, for appellee.

UDALL, Justice.

Olive Daly as plaintiff (appellant) instituted a suit in replevin against Earl Williams, defendant (appellee), to recover possession of two flat-bed trailers or in the alternative $1,000, the value thereof, plus damages in the sum of $500. Defendant by answer admitted he had possession of the trailers, claiming to have acquired ownership thereof. He alleged execution of a contract of lease with an option to buy the subject trailers, entered into with Lloyd J. Green and P. W. Walters, a copartnership, d.b.a. Green & Walters at 2180 Grand Avenue in Phoenix, these latter acting as agents of plaintiff. At the conclusion of

the jury trial; verdict was rendered for defendant and judgment regularly entered thereon. Plaintiff's motion for a new trial was denied and this appeal followed.

There are a number of assignments of error and propositions of law which we shall later summarize and discuss in such order as seems best. The primary question involved is one of agency, i. e., the authority of Green & Walters to act for plaintiff. We shall throughout refer to the parties as they were designated in the trial court.

A brief resume of the facts, stated in a light most favorable to a sustaining of the judgment, will be given in order that the issues presented may be better understood. Plaintiff acquired title to the two trailers —the subject of this litigation—at an execution sale held on March 6, 1950. Two or three weeks thereafter, in order to avoid a mounting storage bill, she delivered possession to Green & Walters with whom she was acquainted. The partnership was then engaged in manufacturing trailers and operating a service yard, and had originally built these particular trailers. Plaintiff's version of the conditions under which she placed the trailers with Green & Walters is that she contacted them and they were agreeable to her bringing the trailers there and leaving them without any storage charge at all. She denied giving any authority to them to lease or sell the chattels but admitted saying that "I would sell them for $500 each." Partner Green was permitted to give his version of the conditions under which plaintiff placed the trailers with them. (This testimony is hereinafter set out in extenso.) He further testified that acting upon the claimed oral authorization of plaintiff to lease, rent or sell, the partners sold the trailers to defendant Williams on September 2, 1950 for $300 each. At the time of delivery defendant paid $100 to them for the owner and before trial the balance of $500 was deposited with the Clerk of Court to abide the outcome of the suit, and the judgment finally entered directed this to be paid to plaintiff.

It appears that after leaving the trailers with the partners plaintiff went to California. The former, not knowing her whereabouts and being unsuccessful in attempts to contact her, could not obtain possession of the certificates of title to the trailers which plaintiff had failed to leave with them as promised, nor were they able to remit the $100 to her. Upon plaintiff's return to Arizona the forepart of March, 1951, she first learned of the purported lease and sale to defendant Williams. She informed defendant she was the owner of the trailers and demanded possession thereof, and when he refused her demands commenced this replevin action on March 7, 1951.

The following testimony of defendant Williams as to a conversation had in his presence between plaintiff Daly, partner Walters, and himself, throws additional light on the original understanding under

which the trailers were taken to the lot at 2180 Grand Avenue:

"Q. Tell us what conversation you had, the three of you there, what Mrs. Daly said, what Mr. Walters said, and what you said. A. I said, 'Mrs. Daly and I are here to straighten up on these trailers.' Mr. Walters said, 'Okay, fine, we will get together and straighten it up.' Mrs. Daly said, 'Why did you sell my trailers?' He said, 'We sold them just like you said to.' He said, 'I had a hundred dollars here that he paid on the trailers.' She says, 'Why haven't you given it to me?' He says, 'You haven't been here to receive it.' She said, well, she wouldn't accept the money. I said, 'Let me make a check here, I will pay the difference and everybody will be happy.' She said, 'I won't accept it.'

"Q. What difference were you talking about? A. The $500.

"Q. Was that mentioned? A. Yes.

"Q. She refused to accept it? A. Yes.

"Q. What did she say? A. She said, 'I won't accept it, I want $500 apiece. I left here with an option to buy, but now I want $500 apiece.'"

On cross-examination this further answer was given:

"A. She [Mrs. Daly] said, 'I authorized you to sell them then for that, but I want $500 each for them now.'"

At the trial partner Green was asked by defendant to relate the conversation had between plaintiff and himself when she left the trailers at their place of business. The court overruled plaintiff's objection to this question and the following testimony was given:

"A. Mrs. Daly came out to the shop and told us she had these trailers in storage and the storage on them was so high that she couldn't afford it and she wanted to bring them out to our place. We told her to bring them out, there would be some arrangement made for storage, there wasn't no storage fees at all, *and she said she wanted to get her money out of them any way we could do it, lease them out, rent them out, or sell them, or put them on lease with option to buy,* anything so she could get her money out of them, and she agreed to it at that time.

"Q. What was said as to the price you were to lease them or sell them for? A. There was nothing said, there was no price set.

"Q. Who was to determine the price? A. We were to get as much as it was possible to get.

"Q. Is that what she said to you? A. That is what she told me." (Emphasis supplied.)

Plaintiff contends the admission of this testimony was error "for the reason that this enabled the defendant to prove agency out of the mouth of the claimed agent him-

self." She relies upon the rule that the declarations of an alleged agent are not evidence of the fact of agency, nor the extent thereof, citing Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290, and United States Smelting, etc., Co. v. Wallapai Mining & Development Co., 27 Ariz. 126, 230 P. 1109. While this rule is well established, not only in this jurisdiction but elsewhere, and the court instructed the jury to this effect, it has no application to the testimony complained of. It is elementary that the existence of an agency may be proved by direct evidence of an express contract of agency between principal and agent, Litchfield v. Green, supra, and as stated by the Supreme Court of California:

"The rule is well established that the fact of agency when it rests in parol may be established on the trial by the testimony of the agent himself. His testimony is admissible and competent to prove the agency and the nature and scope of his authority and to bind his principal thereby. This is the general, and, it may be said, the universal rule. (Numerous cits.)" Kast v. Miller & Lux, 159 Cal. 723, 115 P. 932, 933.

The law is stated thus in 2 Am.Jur., Agency, section 446:

"Although an alleged agent's extrajudicial statements are not admissible to prove the fact of his agency, that fact may, when it rests in parol, be established on the trial by the testimony of the agent himself; he is a competent witness to prove the agency, and his testimony cannot be restricted to the mere words used by the principal, but is admissible generally on the whole subject."

The soundness of this rule is obvious. In the instant case plaintiff had testified as to her version of the negotiations with the partnership, denying the existence of an agency contract. The testimony complained of was in sharp conflict with her version. To apply the principle urged by plaintiff in this situation would enable any principal to deny the existence of an agency contract founded in parol, thus effectively closing the mouth of the only other person who could testify to the existence of that contract.

The distinction between testimony of the agent as to his contract with the principal, and testimony concerning extrajudicial statements made by the agent is obvious. In the latter situation, the witness is relating hearsay statements of the agent— i. e., the statements that the agent made to him—while in the former situation the agent's testimony relates the terms of his oral contract with the principal, and these terms being in issue cannot be classified as hearsay.

It follows that Green's testimony was competent to establish his right to deal with the trailers as an agent and the jury by its verdict having accepted this version of the transaction, we are bound thereby.

Plaintiff assigns as error the action of the court in giving a standard stock instruction to the jury to the effect that plaintiff, tendering an affirmative issue, carries the burden of proof and must establish the justness of her claim by a preponderance of evidence; otherwise she cannot recover. The contention is that this instruction was misleading and confusing in that the burden of establishing agency was upon defendant and plaintiff had no burden to show that such agency did not exist. We have repeatedly held that instructions must be considered as a whole and the test of correctness of instructions is whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision. Applying this test it manifestly appears the jury could not have been misled because the court, at the request of plaintiff, gave four specific instructions dealing with this matter of proof of agency. For instance, the jury was expressly told that (a) the burden was upon the defendant to prove affirmatively the direct or implied authority of Green & Walters to execute the contract in question; (b) agency is never presumed, the burden of proving it rests upon the one relying upon it, and that one dealing with an agent is required to discover at his peril whether the agent has the power to do the proposed act; (c) unless they found by a preponderance of the evidence that the agents, Green & Walters, had authority to lease and sell the property, then the jury's verdict must be for plaintiff. There is no merit whatsoever to this assignment.

Plaintiff next contends that "payment of the $100 to Green & Walters was not a discharge of a debt owed to plaintiff" for the reason that Green & Walters had no authority to receive payment. In support of this proposition cases are cited which state the general rule that an agent authorized to sell commodities has no implied authority to receive or collect payment therefor. While this rule is well settled, it is subject to certain well-established exceptions. As stated in 2 Am.Jur., Agency, section 127:

"[This rule] is subject to modification if there is an apparent authority on the part of the agent to receive payment. This apparent authority may arise in various ways. *One of the most common is possession of the goods.* If the principal has intrusted the agent with the possession of the goods to be sold, the purchaser is warranted in paying the price to the agent. * * *" (Emphasis supplied.)

In the case of Oleson v. Albers, 130 Neb. 823, 266 N.W. 632, 634, 105 A.L.R. 714, the owner of grain put an agent in possession thereof under circumstances which would indicate to a buyer of ordinary prudence that such agent had authority to sell it and collect the purchase price. The court stated:

"* * * It is established by a long line of authorities that an agent, having possession of commodities which he is authorized to sell, has implied authority to receive or collect payment therefor. * * *"

and held the purchaser, having paid the agent was not liable to the principal for the price of the grain. Cf. Arizona Storage, etc., Co. v. Rynning, 37 Ariz. 232, 293 P. 16. See also Annotation "Authority of Agent to Receive Payment," subsection II, c. 1, entitled "Authority of agent implied from possession of goods." 8 A.L.R. 203, 215, and supplementary annotation appearing in 105 A.L.R. 718, 721, and cases there cited.

Plaintiff makes much of previous statements of this court that one dealing with an agent is charged with the duty of ascertaining the limits of his authority, actual and apparent, and cannot bind the principal for acts of the agent in excess thereof. However, these statements do not, as she would have us believe, mean that one who deals with an agent acting within the scope of his authority loses his right to hold the principal by failure to ascertain such facts.

The jury by its verdict found that Green & Walters were intrusted with the trailers for sale. We hold as a matter of law that the latter were authorized to receive payment therefor.

The court admitted in evidence —for a limited purpose only—a writ of execution and return of sale on the two trailers in question in the case of Daly v. Goulding, this being the genesis of plaintiff's title. The return showed the purchase price was $80 and all of said documents were read to the jury but they were specifically told these were being admitted for other purposes but "* * * not for the purpose of showing the value of the trailers at the time of the alleged taking * * *." Thereafter counsel for defendant unsuccessfully attempted to elicit from plaintiff that no money was paid at the sale, finally asking this question:

"Q. And you credited the amount you bid on the judgment you had against the man you had loaned money to, didn't you?"

Although the objection made was overruled, the witness never did answer the question. It was error to not have sustained the objection as the only issue was the right to possession and the value of the trailers at the time of trial, however no possible prejudice resulted. There is no merit to this assignment.

Plaintiff assigns as error the court's refusal to admit her testimony on rebuttal as to damages sustained by loss of use of the trailers. It appears that plaintiff had fully testified as to this matter during presentation of her case in chief. There was therefore no prejudice resulting from any claimed error in this respect; this is particularly true in the light of the verdict rendered.

There are other assignments made and arguments advanced in plaintiff's briefs filed in support thereof that we feel are not deserving of separate treatment. Suffice it to say that all such matters have been considered and found to be without substantial merit. There being no reversible error in the record, the trial court's judgment is affirmed.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.