428 P.2d 490

**Gale KILLINGER, dba Killinger Electric, Plaintiff-Appellant,**

v.

**Case IEST and A. W. Tadlock, Defendants-Respondents.**

**No. 9619.**

Supreme Court of Idaho.

May 31, 1967.

Kramer, Walker, Pope & Plankey, Twin Falls, for appellant.

Gigray, Boyd & Downen, Caldwell, for respondents.

SMITH, Justice.

Appellant has appealed from a judgment of involuntary dismissal of his action directed against respondents, and from an order denying his motion for a new trial. Appellant operates an electric appliance repair shop in Twin Falls. Respondent Iest resides in Parma; he owns a farm situated north of Shoshone, herein referred to as the Shoshone farm. Respondent Tadlock was Iest's tenant under an oral lease of the Shoshone farm.

Appellant alleged in his complaint that Tadlock, as tenant and agent of Iest, "engaged" appellant to furnish and install an electric irrigation pump on the Shoshone farm; that Tadlock in his personal capacity also promised to pay for the pump; that appellant performed the obligations of the oral contract; and that the respondents, and each of them, wrongfully refused to pay the agreed price for the pump, related materials, and installation services.

The cause was tried to the district court sitting without a jury. Appellant's case-in-chief, based upon the testimony of appellant, respondents, and appellant's assistant, Ralph Taylor, revealed the circumstances surrounding the transaction to be as follows:

On May 21, 1963, Tadlock by telephone requested appellant to repair an electric pump used for irrigating the Shoshone farm. Appellant and Ralph Taylor drove to the farm, met with Tadlock, and inspected the malfunctioning pump. The pump appeared to require extensive repair, so appellant loaded the machine into his truck and transported it to Twin Falls. At that time appellant was unaware that Iest owned the Shoshone farm and that Tadlock was merely Iest's tenant.

The next day, May 22nd, Tadlock went to Twin Falls to inspect the pump. The shaft was broken and the pump was generally in poor condition. Tadlock felt that too much time would elapse before the pump could be restored, and that a new, more efficient pump should be immediately installed to irrigate Tadlock's crops. According to appel-

574

lant's testimony, Tadlock then informed appellant that Iest owned the farm and that he, Tadlock, was Iest's tenant. Tadlock further asserted that he had authority from his landlord, Iest, "to make this extensive repair and improvement on the place," that "he had authority from his landlord to repair the pump or purchase a pump," and that Iest would pay the agreed price. Appellant admitted on cros-examination that he made no attempt to contact Iest for confirmation of Tadlock's asserted authority, but relied solely upon Tadlock's statements. Moreover, contrary to the allegations of his complaint, appellant testified that he never requested Tadlock to become a party to the oral contract, nor did Tadlock volunteer his personal liability on the agreed purchase price.

Appellant installed the new pump on Iest's premises on June 1, 1963. An itemized bill, amounting to $2,047.89, covering machinery, material and installation charges, was mailed to Iest in Parma sometime during the second week of June. This was Iest's first notice that appellant had installed a pump on the Shoshone farm and that Iest was expected to pay. Shortly after Iest received the bill, appellant telephoned Iest and requested payment. Iest refused and denied in unequivocal terms that Tadlock had any authority to bind Iest on the purchase of the irrigation pump.

Appellant sought to establish Tadlock's rights and duties under his oral lease agreement with Iest. Tadlock, called as an adverse witness under I.R.C.P. 43(b), testified on cross-examination by appellant's counsel that his duties as Iest's tenant had been simply to farm the Shoshone farm. The costs of seed and utility bills were divided between landlord and tenant. A major expenditure for installation of a concrete pipeline was ordered personally by Iest. On one occasion, Tadlock had a broken shaft on Iest's tractor repaired, but Tadlock himself paid the bill without consulting Iest. There was no evidence that cash, a portion of Tadlock's crops, or other consideration passed to Iest as the considera-

tion under the oral lease. Tadlock testified, finally, that he used the pump for irrigation purposes throughout the 1963 crop season.

Appellant then called respondent Iest who testified that he customarily ordered work and paid the bills himself. Iest added that Tadlock's conduct was unprecedented and definitely beyond his powers and duties as Iest's lessee.

At the close of appellant's evidence, respondent Iest moved for an order of involuntary dismissal pursuant to I.R.C.P. 41(b), on grounds that appellant's evidence was insufficient to prove Iest's liability on the alleged parol contract. Respondent Tadlock also moved for involuntary dismissal, contending that upon the evidence and the law he was not liable to appellant.

The trial court granted both motions and thereafter entered separate judgments, one dismissing the action as to respondent Iest, and the other, dismissing the action as to respondent Tadlock. In granting respondents' motions for dismissal, the district court took the view that appellant failed to introduce substantial evidence to show Iest's liability on a theory of agency, or that Tadlock was indebted to appellant as a party to the parol agreement.

The trial court's disposition of the action constituted a determination thereof on the merits. Grieser v. Haynes, 89 Idaho 198, 404 P.2d 333 (1965); Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340 (1964). On this appeal, the failure of the district court to find the facts specially and state separately the conclusions of law, as required by I.R.C.P. 52(a), is not assigned as error.

Appellant asserts that "The trial court erred in granting defendants' [respondents'] respective motions for involuntary dismissal * * *." Under I.R.C.P. 41(b), the dismissal is proper only where "upon the facts and the law the plaintiff has shown no right to relief."

We conclude that the district court properly granted the motion for dismissal of appellant's action against respondent Iest. Appellant failed to advance any

competent evidence tending to establish that Iest had invested Tadlock with express or implied authority to contract for the furnishing and installation of an irrigation pump on the Shoshone farm. Appellant, by not showing how Iest benefited by any increased yield of Tadlock's crops, if such there was, also failed to establish Iest's alleged liability on a theory of ratification. And, finally, appellant's contention that Iest should be estopped to deny liability must be rejected, since the evidence clearly shows that Iest never held his tenant out as having authority to contract for major improvements on the Shoshone farm.

Appellant assigns as error the district court's several rulings as to the admissibility of testimony which appellant sought to introduce against respondent Iest.

Appellant first contends that the trial court erroneously ruled that Tadlock's declarations as to the existence and scope of his authority would not be binding on Iest, the alleged principal. That ruling was proper. The declarations of an alleged agent, standing alone, are insufficient to prove the grant of power exercised by him and to bind his principal to third parties. Appellant's testimony as to Tadlock's declarations and assumptions was hearsay and inadmissible against the principal to prove the existence of Tadlock's alleged agency. Brunette v. Idaho Veneer Co., 86 Idaho 193, 384 P.2d 233 (1963); Chamberlain v. Amalgated Sugar Co., 42 Idaho 604, 247 P. 12 (1926); Cupples v. Stanfield, 35 Idaho 466, 207 P. 326 (1922); Cox v. Crane Creek Sheep Co., 34 Idaho 327, 200 P. 678 (1921); Restatement (Second), Agency § 285 (1958).

The statements by the alleged agent, as to the scope of his authority, are admissible if, at the time the statements are offered in evidence, the existence of the agency has been proven by independent evidence. Hayward v. Yost, 72 Idaho 415, 242 P.2d 971 (1952); Lightner v. Russell & Pugh Lumber Co., 52 Idaho 616, 17 P.2d 349 (1932); Seavey, Agency § 105B (1964). Appellant introduced no independent evidence proba-

tive of Tadlock's alleged agency, so that no foundation existed whereby any such statements by Tadlock could serve to corroborate or define the extent of his alleged agency.

The fact of Tadlock's tenancy on Iest's property would not constitute independent evidence of agency. Unless made so by specific agreement, a tenant is not the agent of his landlord for any purpose. Denver Tramway Corp. v. Rumry, 98 Colo. 24, 52 P.2d 396 (1935); Shaver v. Bell, 74 N.M. 700, 397 P.2d 723 (1964); Coe v. Esau, 377 P.2d 815 (Okl.1963); 2 C.J.S. Agency § 2.

Counsel for appellant, on direct examination of appellant, proposed the question:

"Now, getting back to this * * * conversation on the ranch with Mr. Iest and Mr. Tadlock * * *, at that time do you recall whether or not Mr. Iest made any statements indicating that Mr. Tadlock had the authority that he told you he had?"

The question obviously suggests to the witness the answer which appellant's counsel desired. The trial court correctly sustained respondents' objection on the ground that the question as phrased, was leading or suggestive. See I.C. § R9–1203.

Appellant's counsel on further cross-examination of Tadlock, called as an adverse party, attempted to question him on the subject of his alleged authority as Iest's agent. According to appellant's argument on appeal, this interrogation was intended to establish Iest's liability for the acts of his alleged agent. The trial court sustained objections by Iest's counsel to certain of those questions proposed. Counsel asked of Tadlock, first, whether Tadlock possessed authority to install a new pump on Iest's property; second, whether Tadlock and Iest had reached an agreement as to Tadlock's power to make purchases for the maintenance and improvement of the property; and, third, whether Tadlock understood or felt that he had to contact Iest prior to incurring any expenses. Appellant assigns as

error the trial court's rulings excluding answers to those questions.

■ While an agency relation cannot be proved by the extra-judicial statements and declarations of one purporting to act as agent, the fact of agency, when it rests in a parol agreement, may be established at trial by the testimony of the agent himself. The agent's extra-judicial statements are mere hearsay, but at trial the agent's testimony concerns his relationship to the alleged principal. The relationship being in issue and the witness being subject to cross-examination, the agent's testimony cannot be termed hearsay. Daly v. Williams, 78 Ariz. 382, 280 P.2d 701 (1955); Jameson v. First Savings Bank & Trust Co., 40 N.M. 133, 55 P.2d 743, 103 A.L.R. 1492 (1936); 3 Am.Jur.2d Agency § 354 (1962).

■ The alleged agent, however, should testify as to the existence of facts or conditions which establish the ultimate fact of agency. Apellant's questions, essentially inquiring as to whether Iest delegated authority to Tadlock, call for an inadmissible conclusion of the witness. Parker v. Otis, 130 Cal. 322, 62 P. 571, 927 (1900); Hutchings v. Cobble, 30 Okl. 158, 120 P. 1013 (1911); 19 Cal.Jur.2d Evidence § 318; 7 Wigmore, Evidence § 1960 (3d ed. 1940).

Appellant adopted the position at trial that, even if Tadlock originally lacked authority to act as Iest's agent in purchasing the pump, Iest subsequently ratified the transaction by accepting and retaining benefits resulting from Tadlock's use of the pump. See Tomasini v. Smith, 26 Cal.App. 227, 146 P. 691 (1914); Stout v. McNary, 75 Idaho 99, 267 P.2d 625 (1954); Restatement (Second) Agency § 99 (1958). Appellant established that Tadlock irrigated the 1963 crops with the new pump, but appellant's evidence as to the quality of the 1963 harvest was excluded by the trial court. The ruling is assigned as error.

■ Assuming that appellant's evidence as to the 1963 harvest should have been admitted as relevant to the issue of ratification, appellant nevertheless failed to prove that Iest in any way benefited from Tadlock's use of the pump. The benefits must accrue directly to the principal as the proximate result of the unauthorized transaction in order to constitute ratification by the principal. Bankers Protective Life Ins. Co. v. Addison, 237 S.W.2d 694 (Tex.Civ. App.1951); 3 Am.Jur.2d Agency § 175 (1962). Exclusion of evidence that the pump enhanced the quality of Tadlock's crops, in the absence of proof that an increased yield directly benefited respondent Iest, did not prejudice this theory of appellant's case.

Although the dismissal of appellant's action against Iest was proper, the dismissal of the action against respondent Tadlock stands upon different grounds. Appellant's evidence, particularly appellant's own testimony, established that Tadlock had represented he had authority as Iest's agent "to make this extensive repair and improvement," "to repair the pump or purchase a pump," and to bind Iest for the agreed purchase price. The testimony of Ralph Taylor, appellant's assistant, corroborated appellant's testimony, and this evidence remained uncontradicted through the examination of the respondents, Iest and Tadlock.

■ A party entering into a contract in his self-assumed capacity as agent, with no actual authority from the purported principal, or in excess of an existing authority, is personally liable to the other contracting party who acted in good faith and in reliance on the false representations. The liability terminates only if the purported principal is estopped to deny the authority or subsequently ratifies the transaction. Lois Grunow Memorial Clinic v. Davis, 49 Ariz. 277, 66 P.2d 238 (1937); Moore v. Maddock, 251 N.Y. 420, 167 N.E. 572, 64 A.L.R. 1189 (1929); Restatement (Second) Agency §§ 329, 330 (1958).

■ The issue of Tadlock's liability for misrepresentation of his authority is somewhat at variance with the issues as framed by appellant's complaint. Nevertheless, once the issue emerged from appellant's

offered proof, submitted by express or implied consent of the parties, the district court was obligated to treat the issue of misrepresentation in all respects as if it had been raised in the pleadings. I.R.C.P. 15 (b); McMinn v. Holley, 86 Idaho 186, 384 P.2d 229 (1963); Morford v. Brown, 85 Idaho 480, 381 P.2d 45 (1963).

The motion for involuntary dismissal of the appellant's action should not have been granted as to respondent Tadlock, since, on the law and the facts established, it appears that appellant had shown a right to relief against respondent Tadlock. I.R.C.P. 41(b). See 2B Barron & Holtzoff, § 919 (Rev. ed. 1961); 5 Moore, Federal Practice § 41.13 (2d ed. 1966).

The district court's judgment of dismissal of appellant's action against respondent Iest is affirmed.

The judgment of dismissal of appellant's action against respondent Tadlock is reversed and the cause is remanded for further proceedings consonant with the views herein expressed.

Appellant is allowed his costs apportioned against respondent Tadlock.

Respondent Iest is allowed costs against appellant.

TAYLOR, C. J., and McFADDEN, J., concur.

SPEAR, Justice (concurring in part and dissenting in part).

I concur with that portion of the majority opinion affirming the judgment of involuntary dismissal (actually an order granting a motion for non-suit) as to defendant Iest, but I dissent from that portion of the opinion which reverses the judgment of involuntary dismissal granted to defendant Tadlock and remands to the trial court that portion of the cause for further proceedings.

Tadlock's liability on the contract is based, by the majority opinion, on the principle that a party entering into a contract in his self-assumed capacity as agent, with no actual authority from the purported principal, or in excess of an existing authority, is personally liable to the other contracting party who acted in good faith and in reliance on the false representations. Nowhere in the pleadings before the trial court, i. e., plaintiff's amended complaint, plaintiff's notice of claim of mechanic's and materialman's lien, or in the respective answers of the two defendants, is this issue even remotely raised; but this deficiency is sidestepped by the majority, after recognizing it, by holding—"Nevertheless, once the issue emerged from appellant's offered proof, submitted by express or implied consent of the parties, the district court was obligated to treat the issue of misrepresentation in all respects as if it had been raised in the pleadings," citing I.R.C.P. 15(f), McMinn v. Holley, 86 Idaho 186, 384 P.2d 229 (1963); Morford v. Brown, 85 Idaho 480, 381 P.2d 45 (1963).

This principle is inapplicable to the cause at hand for two reasons: First, in the McMinn and Morford cases the specific issues decided by the court were raised in the briefs of the parties, both in their points and authorities and in the arguments contained in the briefs. This is not so in the case before us. There is no mention whatever in the briefs of either the appellant or the respondent concerning the personal responsibility of defendant Tadlock to the appellant on the theory advanced by the court, nor is there any mention of such issue in the pleadings presented to the trial court. It has long been the ruling of this court that it will not consider issues presented for the first time to this court unless it be the issue of jurisdiction of the trial court. Cantlin v. Carter, 88 Idaho 179, 397 P.2d 761; Miller v. Miller, 88 Idaho 57, 396 P.2d 476; Robinson v. Spicer, 86 Idaho 138, 383 P.2d 844; Frost v. Mead, 86 Idaho 155, 383 P.2d 834; Cox v. Cox, 84 Idaho 513, 373 P.2d 929; Smith v. Shinn, 82 Idaho 141, 350 P.2d 348; Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686; Webster v. Potlatch Forests, 68 Idaho 1, 187 P.2d 527; Miller v. Donovan, 11 Idaho 545, 83 P. 608.

Secondly, the provision of I.R.C.P. 15(b) relied upon in the majority opinion is as

**578**

follows: "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The record in this case does not bring it within this provision; but instead clearly shows that the plaintiff did not rely upon the theory, advanced for the first time by the supreme court itself, in concluding that Tadlock was personally liable to appellant. The record shows, on page 22 of the transcript, when the appellant was being cross-examined, the following testimony:

"Q. You have never even up to today asked Mr. Tadlock to pay for the pump, have you?

"A. No, Sir.

"Q. And did Mr. Tadlock in this conversation say anything to you to give the impression he was going to pay for the pump?

"A. No, Sir.

"Q. Then your discussion was discussing a sale to Mr. Iest, the owner of the property, is that correct?

"A. Through Mr. Tadlock, yes.

"Q. In fact, that is the way you word your complaint that Mr. Tadlock was an agent of defendant Iest, is that correct?

"A. Yes".

In my opinion the quoted provisions of I.R.C.P. 15(b) should be applied only in cases where the record clearly shows the parties did in fact fully try the issues not pleaded in the trial court, for all issues should first be presented to the trial court prior to any recognition thereof on appeal to this court.

There is sound reasoning behind the consistent holding of this court refusing to decide issues which have not first been submitted to the trial court, for the opposing counsel has not had an opportunity to present his case before a trial judge. Even more compelling is the reasoning behind the rule that this court should not of its own motion take cognizance of, and decide cases upon, issues not raised by either counsel for the parties in their briefs, written arguments or oral arguments before the court. Neither party has had an opportunity to be heard on such an issue in the trial court nor to brief or argue it properly before this court.

The judgment of the trial court should be affirmed in all respects.

McQUADE, J., concurs with this dissent.