508 P.2d 343

George SEELY, Appellant,

v.

Norman HAGEN, aka Norm Hagen and Olga
Hagen, his wife, Appellees.

No. 2 CA–CIV 1296.

Court of Appeals of Arizona,
Division 2.

April 10, 1973.

Harry Bagnall, Coolidge, for appellant.

Donald C. Cox, Eloy, for appellees.

KRUCKER, Judge.

This appeal arises from a controversy concerning the ownership of thirty head of cattle. Appellant, plaintiff below, filed suit against appellees, defendants below, alleging that he was the owner of and entitled to the possession of said cattle which the defendants had allegedly converted to their own use; and that by reason of said wrongful conversion and detention he had sustained damages in the amount of $4,035. The defendants denied the material allegations of the complaint and asserted various affirmative defenses. The case was tried to the court resulting in a judgment in favor of the defendants that plaintiff take nothing by his complaint. The judgment contains the following recitation as to the court's reasons for its decision:

"Where one of two innocent parties must suffer because of the action of a third person, loss should fall upon the one, who by his conduct, created the circumstances which enabled the third party to perpetrate the wrong or caused the loss."

The evidence most favorable to sustaining the judgment is as follows. In June, 1971, the plaintiff consigned a load of cattle to Arlington Cattle Company in Arizona. After the cattle had been shipped, he learned that Arlington would prefer not to receive the cattle. When his truckdriver called him from Tucson, as he had been instructed, the plaintiff directed him to deliver the cattle to a cattle rest near Eloy. A health certificate issued by Texas inspection authorities was in the possession of the truckdriver who was transporting the

cattle. Between the time that the plaintiff had been informed that Arlington did not want the cattle and the call from his trucker, the plaintiff contacted a Mr. Buchanan in Eloy. Buchanan was a cattle broker with whom the plaintiff had previous dealings concerning the sale of his cattle. The plaintiff instructed Buchanan to sell the cattle for him.

According to the plaintiff his previous dealings with Buchanan in cattle transactions were successful. He directed his trucker to unload the cattle at Eloy when Buchanan informed him that there were several farms in the Eloy area that would buy the cattle. Therefore he told Buchanan to try to sell the cattle in small lots and to go ahead and buy the feed and do everything necessary to keep the cattle. Buchanan followed his instructions and took charge of the cattle which were delivered to the cattle rest in Eloy. He arranged for the sale of all the cattle, including a sale of thirty head to Mr. Hagen, defendant in this lawsuit. Buchanan also arranged for a health inspection of the cattle, as required by law, and delivery of the cattle to the Hagen farm. The information on the certificate was supplied to the health inspector by Buchanan. According to the testimony of Hagen and an employee of the cattle rest, Buchanan indicated to Hagen that Seely was his partner. The livestock inspection certificate contained the name George Seely in the space designated "Signature of Seller or Owner" and on the next line in the space designated "By" the name Herman Buchanan was written.

The certificate was delivered to Hagen when he paid Buchanan by means of two checks payable to Herman Buchanan. No payment was forwarded to the plaintiff by Buchanan and after several weeks had elapsed he decided to investigate. He came to Arizona and learned of the sale to Hagen. An attempt to stop payment on Hagen's check was unsuccessful and on July 30, 1971, the plaintiff filed a criminal complaint against Buchanan. This complaint, signed by Seely, alleged that Herman Buchanan was entrusted with property belonging to Seely for the sale or transfer thereof and that Buchanan fraudulently converted proceeds thereof to his own use.

■ There is no conflict in the evidence as to Buchanan's authority to sell the subject cattle. The plaintiff admitted at trial that he had expressly authorized Buchanan to do so. This is further supported by the allegations of the criminal complaint. Thus we see that there is sufficient evidence to support a finding that Buchanan had authority to bind the plaintiff to a sale of the cattle. Aetna Loan Co. v. Apache Trailer Sales, 1 Ariz.App. 322, 402 P.2d 580 (1965). The next question to be resolved is whether Buchanan had authority to receive or collect payment for the cattle. It is true the general rule is that an agent authorized to sell commodities has no implied authority to receive or collect payment therefor. This rule, however, is subject to certain well-established exceptions. One such exception is if there is an apparent authority on the part of the agent to receive payment. Where the principal has entrusted the agent with possession of the goods to be sold, a purchaser may rightfully assume his authority to collect the purchase money. Daly v. Williams, 78 Ariz. 382, 280 P.2d 701 (1955); Ronald A. Coco, Inc. v. St. Paul's Methodist Church, 78 N.M. 97, 428 P.2d 636 (1967); 3 Am.Jur.2d Agency § 106. Plaintiff Seely was therefore bound by the payment to Buchanan and such payment operated to discharge the indebtedness despite Buchanan's failure to turn the money over to Seely. 3 Am.Jur.2d Agency § 265.

We agree with the lower court's disposition of this case. It is truly unfortunate that the plaintiff's trust and confidence in Buchanan were misplaced. However, it was he who created the circumstances which enabled Buchanan to cause the loss and therefore the law leaves him to his

**458**

remedy against Buchanan. In re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877 (1966); Patterson Motors, Inc. v. Cortez, 2 Ariz.App. 298, 408 P.2d 231 (1965).

Judgment affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.