542 P.2d 1170

Adam **PATINO**, by and through his Conservator, Ed Richardson, Plaintiff-Respondent,

v.

**GRIGG & ANDERSON FARMS**, a Co-Partnership, et al., Defendants-Appellants.

No. 11814.

Supreme Court of Idaho.

Nov. 28, 1975.

---

Jeremiah A. Quane of Quane, Kennedy & Smith, Boise, for defendants-appellants.

Donald J. Chisholm of Goodman, Duff & Chisholm, Rupert, Dean Kloepfer, Burley, for plaintiff-respondent.

DONALDSON, Justice.

Plaintiff-Respondent Adam Patino, through his conservator Ed Richardson, filed this action in Fifth Judicial District Court on April 26, 1974. In his complaint Patino claimed damages for injuries received when he was run over by a potato harvester operated by defendant-appellant Rex Martin. At the time of the accident both Martin and Patino were employed by defendant-appellant Grigg & Anderson Farms, a partnership, and were working on its farm near Rupert. J. D. Biggs, named as a defendant in the complaint but later dismissed, supervised operations for the partnership at their 2,600 acre Rupert farm, having some forty-one employees under his direction. In his suit plaintiff alleged negligence on the part of Grigg & Anderson Farms and its other named employees.

Trial was had before a jury which returned a special verdict for plaintiff on December, 18, 1974, finding plaintiff's dam-ages to be $210,000 and apportioning the negligence as follows: Grigg & Anderson Farms, 75%; Rex Martin, 20%; plaintiff, 5%. The jury also found that plaintiff did not assume the risk of his injuries and was not a fellow servant of Rex Martin. Defendants appeal from the judgment rendered for plaintiff in the amount of $199,500 together with his costs. They contend on appeal that the trial court's instructions allowed the jury to improperly assess damages; that an instruction concerning certain testimony by plaintiff was not supported by the evidence and the testimony was not admissible at trial; that the special verdict form was improper and prejudicial; and that the finding of negligence against Grigg & Anderson Farms was not supported by the evidence.

The following facts are adduced from the record on appeal:

Respondent Patino is a Mexican National who was in the United States illegally at the time of the accident. He was hired by J. D. Biggs on October 1, 1973 to assist Grigg & Anderson Farms with the potato harvest.

The potatoes were harvested with mechanical potato combines pulled and powered by tractors. The combines dug the potatoes and were equipped with a conveyer belt which dumped them into a truck which would follow along beside the combines. This was Patino's first work with mechanized harvesting equipment. Biggs, who knew only a few Spanish phrases, explained Patino's job to him. Patino neither spoke nor understood English. Patino was to stand on a platform on the combine and pick clods, rocks and other debris from the conveyor belt as it transferred potatoes to the truck. There were two platforms on each combine and it was customary to have two "clodpickers" working at one time.

The day of the accident, October 10, 1973, the combine that Patino normally worked on broke down. Patino was transferred to the combine operated by defendant Rex Martin where he joined the two

regular "clodpickers" on the platforms. Patino worked on the platform until Martin stopped the tractor and harvester to allow the truck driver time to place side boards on his truck. During this hiatus Patino and a fellow worker dismounted and began to pull clods and vines from the bottom of the machine where they occasionally became entangled.

When the truck driver was ready to proceed Martin engaged the power take-off on the harvester. There were a few moments before the tractor began to move and both workers started to climb back up to the platforms on the short ladders provided on the sides of the machine. Patino, however, slipped on his ladder and fell in front of the right wheel of the combine. Although Martin testified he looked back to see if the workers were in place, he started forward and the wheel ran up on Patino's leg and back. There was evidence of serious permanent damage to Patino, including brain damage, as well as substantial medical expenses.

At the conclusion of the testimony the trial court instructed the jury concerning United States mortality statistics, immigration laws and minimum wages and allowed the jury to consider them when assessing damages.[1] The appellants maintain these instructions allowed the jury to speculate that plaintiff would remain in the United States and to reward him for his illegal entry into this country. Appellants would have us substitute an instruction gauging plaintiff's damages in terms of income in his native country of Mexico. It is well settled that damages for loss of earnings or profits must be shown with reasonable certainty and that compensatory awards based upon speculation or conjecture will not be allowed. *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974). In the present case the plaintiff-respondent suffered serious permanent injuries. The jury had many factors to evaluate when it assessed damages for those injuries. The factors listed in the instructions objected to by appellant were to be considered with all of the evidence. Among the evidence before the jury was the fact that the plaintiff remained in the United States at the time of trial and had held two farm related jobs before his accident, both of which paid

---

1. "INSTRUCTION NO. 28
"In considering your answer to question No. 7 of the special verdict—the amount of damages—you may, in arriving at that amount, consider along with the other evidence, the fact that under a standard table of mortality based upon United States statistics, of which we take notice without proof and which is to be considered as evidence in this case, the life expectancy of a nonwhite male person aged eighteen years is forty-six point four additional years.
"However, this figure is not conclusive. It is merely an average of probable remaining length of life of a sample of nonwhite persons in our country who have reached the age in question. Therefore, this data may be considered by you in connection with all other evidence relating to the probable life expectancy of Adam Patino, including the person's occupation, health, habits, and other activities."
"INSTRUCTION NO. 29
"You are instructed that the Court takes judicial notice that there is no numerical limitation on the number of aliens who may lawfully enter the United States from Mexico for permanent residence, but that there is a numerical limitation of five hundred thousand aliens per year for immigrants to the United States from Western Hemisphere countries, which includes Mexico.
"You are further instructed that you may take these facts into account in determining the economic loss, if any, suffered by the Plaintiff if you find these facts applicable."
"INSTRUCTION NO. 30
"You are instructed that the Court takes judicial notice of the fact that the federal minimum wage for workers other than farm workers are as follows:
Prior to December 31, 1974, $2 per hour
January 1st, 1975, and after $2.10 per hour
January 1st, 1976, and after $2.30 per hour
You are further instructed that for agricultural workers the minimum hourly wages established by federal law are as follows:
Until December 31st, 1974, $1.60 per hour
Until January 1st, 1975, $1.80 per hour
Until January 1st, 1976, $2 per hour
Until January 1st, 1977, $2.20 per hour
Until January 1st, 1978, $2.30 per hour
You are further instructed that you may take these figures into account in determining what lost wages, if any, were suffered by the Plaintiff if you find them applicable."

more than the federal minimum wage for farm workers. There was no evidence of plaintiff's wages in Mexico.

■■ We find that the instructions objected to were neither speculative nor conjectural. It is true, as respondent readily admits, that the trial court incorrectly stated the number of immigrants allowed into this country annually from Western Hemisphere countries. At the time of trial the quota for the number of immigrants was 120,000 rather than 500,000 as the trial court instructed. However, we find that this error was not prejudicial. There was ample evidence to support the award whatever plaintiff's future residence.

> "This Court has frequently held, in effect, that even though certain elements of damages have been erroneously submitted to a jury and erroneous instructions thereon have been given to a jury, such errors will be held non-prejudicial where other evidence is abundant to justify the verdict without taking into consideration the erroneously admitted evidence and the erroneous instructions." *Archer v. Shields Lumber Co.*, 91 Idaho 861, 434 P.2d 79 (1967).

Nor did these instructions reward plaintiff for illegality, as appellants suggest, but rather seek to compensate him for his injury. Inasmuch as appellants readily accepted the benefits of plaintiff's labor it is somewhat anomalous to say the least for them to complain now that such benefit was illegally bestowed.

■ Appellant's next assignments of error concern certain testimony of plaintiff. During trial defendants objected to the testimony of plaintiff that one "Jesus" instructed to him to remove weeds and clods from all parts of the machinery. According to plaintiff, "Jesus" was an employee of Grigg & Anderson Farms. The trial court admitted this testimony for the limited purpose of showing plaintiff's state of mind as he approached his job.

Appellants contend that the trial court erred when it allowed plaintiff to testify concerning the instructions of his fellow employee "Jesus." They assert such testimony was hearsay. We disagree. The testimony was admitted not for the truth of the statement allegedly made by "Jesus" but rather to show the plaintiff's own state of mind as he approached his job. As such the testimony was admissible. Bell, Handbook of Evidence for the Idaho Lawyer, Second Edition, p. 128 (1972); *Martin v. Argonaut Insurance Co.*, 91 Idaho 885, 434 P.2d 103 (1967).

A more difficult question was raised, however, when the cause was submitted to the jury. The trial court allowed the jury to consider the question of whether "Jesus" was an employee of defendant Grigg & Anderson Farms. If so, the court instructed, "then the instructions by 'Jesus' to the Plaintiff are to be considered the instructions of the Defendant."[2]

The trial court properly instructed the jury that an agency relationship cannot be

---

2. "INSTRUCTION NO. 35

"Evidence was admitted respecting certain conversations by one 'Jesus' directed to the Plaintiff concerning Plaintiff's duties.

"If 'Jesus' was an employee of the Defendant, Grigg and Anderson Farms, and was acting within the scope of his employment in directing his conversations to the Plaintiff, or if that was a method of instruction the Defendant relied and depended upon in its harvest operations, then the instructions by 'Jesus' to the Plaintiff are to be considered the instructions of the Defendant.

"If 'Jesus' was not an employee of the Defendant, Grigg and Anderson Farms, or if he was an employee but was not acting within

the scope of his employment in instructing the Plaintiff, then the instructions are not binding on the Defendant unless that was a method of instruction the Defendant relied and depended upon in its harvest operation.

"If the proof of an employer-employee relationship is provided solely by the statements of the alleged employee, that proof is not sufficient to prove such relationship.

"An employee is acting within the scope of his authority or employment in giving instructions to another employee if he is doing that which has been assigned to him by the employer, or if he is doing anything which may reasonably be said to have been contem-

**256**

proved by the acts or declarations of the agent or a third person. *Killinger v. Iest,* 91 Idaho 571, 428 P.2d 490 (1967). The appellants argue, however, that the court erred in giving this instruction at all since there was no independent evidence that "Jesus" was indeed an employee. They cite *Nordquist v. W. A. Simons Co.,* 54 Idaho 21, 28 P.2d 207 (1933) for the proposition that it is error for a trial court to instruct the jury on principles of law on which no evidence was introduced at trial.

■ The record does not clearly resolve the issue. The evidence is confused at times by the fact that plaintiff was talking about more than one "Jesus." Plaintiff's initial testimony concerned one "Jesus," a tractor driver. At other times plaintiff testified that a compatriot, identified in the record as "Jesus Reese", worked with him at Grigg & Anderson Farms. J. D. Biggs, defendant's manager, confirmed that one "Jesus Ruis" worked with Patino as a "clodpicker" at Grigg & Anderson Farms. We cannot ignore the fact that plaintiff often became confused during the lengthy trial, at times apparently because of his injuries and at other times due to the difficulties of testifying through an interpreter. Under the circumstances of this case we find no error in the trial court's determination that there was sufficient independent evidence to warrant resolution of this issue by the jury. Conflicts in the evidence are questions for the trier of fact. *Anderson v. Blackfoot Livestock Commission,* 85 Idaho 64, 375 P.2d 704 (1962).

■ In addition, "where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the cause will not be reversed." *Gardner v. Hobbs,* 69 Idaho 288, 206 P.2d 539 (1949), citing *Asumendi v. Ferguson,* 57 Idaho 450, 65 P.2d 713 (1937). In the present case there was abundant evidence for the jury to find that

plated as a part of his employment. It is not necessary that an act must have been expressly authorized by the employer.

Patino was justified in dismounting to pull weeds from the machine. There was testimony by J. D. Biggs that workers often did this type of work and that they were not forbidden to do it. The jury would have been justified in concluding that plaintiff believed he received instructions from "Jesus" even without accepting the truth of such statements. Since there was sufficient evidence for the jury to make their conclusions independent of this instruction no prejudice resulted. Where valid grounds exist for the jury's verdict we cannot presume prejudice merely from the amount of damages. *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969).

■ Appellants claim the verdict form submitted by the trial court to the jury was erroneous. Under this form the jury determined whether there was independent negligence on the part of Grigg & Anderson Farms, Rex Martin and Patino. The jury then apportioned the negligence between those found to be negligent. Finally, they were to determine if Rex Martin was a fellow servant or vice principal of Patino; whether Patino assumed the risk of his injuries; and the total amount of damages sustained by Patino.

Appellants argue that the trial court should have treated all the defendants as one person and imputed any negligence of Martin to Grigg & Anderson Farms. Appellants put forth a verdict form which would first have the jury determine whether plaintiff and Grigg & Anderson Farms were negligent and apportion the negligence between them. Only then, they argue, should the jury establish what portion of Grigg & Anderson Farms' negligence should be attributed to Rex Martin. Appellants assert that were the jury allowed to compare the negligence of Patino with only one other party they would be more likely to find a higher percentage of negligence in Patino's conduct.

"This Instruction explains some of the factual issues you are to decide. I express no opinion on these factual issues."

It was necessary to determine the negligence of Martin apart from that of Grigg & Anderson Farms assuming the fellow-servant rule is still viable (see, however, *Lopez v. Allen*, 96 Idaho 866, 538 P.2d 1170 (1975)). For example, if the jury had found that Patino and Martin were fellow servants and the causal negligence was divided betweem them, Grigg & Anderson Farms would not have been liable to Patino. We see no practical difference whether the negligence of Martin is determined and apportioned along with the other parties, as here, or determined and apportioned after the total negligence of defendants has first been determined, as advocated by appellants. There is no showing, other than appellants' unsubstantiated claims, that an increased number of defendants has a prejudicial tendency to lower the percentage of the plaintiff's negligence in the eyes of this or any other jury. Consequently, we find no error.

Finally, appellants claim that there was insufficient evidence to support a finding of direct causal negligence on the part of Grigg & Anderson Farms. However, there was evidence that Grigg & Anderson Farms did not adequately instruct the plaintiff and that was compounded by plaintiff's lack of experience and inability to understand or speak English. Workers were often shifted from one combine to another without the knowledge of the tractor drivers. There was also evidence that J. D. Biggs supervised some forty-one employees, often miles apart from which the jury could have concluded that there was inadequate supervision. This was more than mere "negligence in the air" as appellants claim; it was negligence grounded in the record by substantial evidence and tied to plaintiff's injuries.

The judgment is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.